KEYSTONE MACARONI MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29992.   Promulgated September 24, 1952.

*Harry J. J. Bellwoar, Jr., Esq.*, for the petitioner.
*Charles J. Hickey, Esq.*, for the respondent.

## OPINION.

LeMire, *Judge:* Petitioner seeks relief under section 721 (a) (2) (C) of the Internal Revenue Code. The pertinent provisions of the statute [1] and the Commissioner's regulations [2] are set out below.

Petitioner has undertaken to show that it realized "abnormal income" (that is, income in excess of 125 per cent of the average income of that class received in the four previous tax years) from the manufacture and sale of spaghetti sauce which resulted from exploration, discovery, prospecting, research, or development of formulae, or processes, within the meaning of section 721 (a) (2) (C).

Petitioner contends that its abnormal net income in the taxable years was due to the formula and processes which it developed for spaghetti sauce and is allocable to the prior years 1938 to 1940, inclusive, during which the "development and research" took place. The cost of developing the formula, it is claimed, was $5,000 in 1939 and $9,204.33 in 1940, a total of $14,204.33.

The evidence establishes that petitioner's president, with the help of one or more of its employees, did develop a formula or process for

---

[1] Internal Revenue Code:

SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

    (a) DEFINITIONS.—For the purposes of this section—

        (1) ABNORMAL INCOME.—The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence.

        (2) SEPARATE CLASSES OF INCOME.—Each of the following subparagraphs shall be held to describe a separate class of income:

        \*      \*      \*      \*      \*      \*

        (C) Income resulting from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months; \* \* \*

    (b) AMOUNT ATTRIBUTABLE TO OTHER YEARS.—The amount of the net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary. \* \* \*

[2] Regulations. 112:

SEC. 35.721–3. AMOUNT ATTRIBUTABLE TO OTHER YEARS.—The mere fact that an item includible in gross income is of a class abnormal either in kind or in amount does not result in the exclusion of any part of such item from excess profits net income. It is necessary that the item be found attributable under these regulations in whole or in part to other taxable years. Only that portion of the item which is found to be attributable to other years may be excluded from the gross income of the taxpayer for the year for which the excess profits tax is being computed.

Items of net abnormal income are to be attributed to other years in the light of the events in which such items had their origin, and only in such amounts as are reasonable in the light of such events. \* \* \* Thus, no portion of an item is to be attributed to other years if such item is of a class of income which is in excess of 125 percent of the average income of the same class for the four previous taxable years solely because of an improvement in business conditions. In attributing items of net abnormal income to other years, particular attention must be paid to changes in those years in the factors which determined the amount of such income, such as changes in prices, amount of production, and demand for the product. \* \* \*

manufacturing spaghetti sauce over a period substantially as claimed, and that petitioner realized income from the sale of such sauce in the taxable years in excess of 125 per cent of its income from the sale of spaghetti sauce in the four previous taxable years. However, we are unable to find from the evidence what portion, if any, of petitioner's income from the sale of the sauce resulted from the development of the formula or what portion, if any, is attributable to prior years.

First, the evidence fails to show that there was anything unique about petitioner's spaghetti sauce formula which gave it any commercial advantage over other spaghetti sauces. In the opinion of the American Can Company research scientist it was of a fine quality and differed somewhat in flavor from other prepared sauces, but there is no evidence that for those reasons it was in greater public demand or had greater potential sale value than competitive sauces, or that those factors resulted in the increase of petitioner's sales of spaghetti sauce.

It will be noted that petitioner had substantial sales of spaghetti sauce in 1939 and 1940 before it began manufacturing its own sauce. It had net sales of $10,868.35 in 1939 and $14,679.20 in 1940. The evidence is that petitioner was in production of its own sauce in September 1940. In 1941, the first full year of production, its sales of spaghetti sauce increased to $31,086.79, and in 1942, to over $93,000. These increased sales could hardly have been attributable to consumer demand for this particular sauce so soon after its introduction to the trade and with practically no advertising except of the general trade name under which it was sold. Petitioner's sales of spaghetti sauce continued to increase to approximately $155,000 in 1943, $176,000 in 1944, and $177,000 in 1945. Over the same period net sales of petitioner's other products rose from $983,301.49 in 1939 to approximately $2,089,000 in 1943 and $2,211,000 in 1945. This would indicate that the increased sales of spaghetti sauce in the taxable years were due in large part to the general increase in the consumption of spaghetti and related products.

There is evidence too that during 1943, 1944, and 1945, there was a growing demand for canned foods and that spaghetti sauce was favored under the wartime point system of food rationing as a substitute for meat and for use as a relish with the cheaper cuts of meat which the public was forced to buy. It has not been shown that during the taxable years there was not a like increase in the sales of other spaghetti sauces manufactured by other concerns, or that petitioner's own brand of sauce was favored by the public over other brands because of its flavor or other characteristics attributable to the formula under which it was produced.

To be entitled to relief under section 721(a)(2)(C) it was incumbent upon petitioner to show not only that there was abnormal in-

come reasonably attributable to the development of the formula but, also, what amounts of such income are attributable to what prior years. The act provides that the amount of abnormal income attributable to prior years or future taxable years shall be determined under regulations prescribed by the Commissioner. The Commissioner's regulations provide that the amounts so attributable are to be determined "in the light of the events in which such items had their origin," and that—

\* \* \* To the extent that any items of net abnormal income in the taxable year are the result of high prices, low operating costs, or increased physical volume of sales due to increased demand for or decreased competition in the type of product sold by the taxpayer, such items shall not be attributed to other taxable years. \* \* \*

The evidence does not show that petitioner's abnormal income for the taxable years did not result from the factors enumerated in the regulations. The facts do show that both the price and the sales volume of petitioner's spaghetti sauce increased, but, as pointed out above, we do not know that the increased sales were not due to increased demand for that type of product rather than for the particular product sold by the petitioner.

For the reasons stated we must conclude that petitioner's claims for relief were properly disallowed.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*