MURIEL HEIM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55159.  Filed November 8, 1956.

*Fred Sorenson, Esq.*, for the petitioner.
*Ivan L. Onnen, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The petitioner contends that she is not jointly and severally liable for any deficiency or addition to the tax based upon a

joint return of herself and her husband for 1951 because she did not sign any such return, did not authorize the signing or filing of any such return on her behalf, and did not know until about a year and a half later that the return filed in her behalf for 1951 was in the form of a joint return. The Commissioner received what he had every reason to believe was a genuine joint return, he took all of his subsequent actions relying upon it as a joint return and has not proceeded against the petitioner for her failure to file a separate return for 1951. The first question is whether the return filed for 1951 is sufficient basis on which to hold the petitioner jointly and severally liable for any deficiency and addition to the tax properly determined on the basis of such a return.

No great help can be obtained from prior decisions in deciding a difficult case like this, since each such case must be decided upon its own facts and differences in the facts distinguish the cases. However, the cases establish the general principle that there can be a binding joint return even though one of the spouses has failed to sign it. "The mere fact that she [the wife] did not sign the returns is not sufficient" to show that a return filed was not a joint return. *W. L. Kann*, 18 T. C. 1032, 1045, affd. 210 F. 2d 247, certiorari denied 347 U. S. 967. The following is from *Myrna S. Howell*, 10 T. C. 859, 866, affd. 175 F. 2d 240:

The 1941 return is not signed by the petitioner. Her failure to sign that return is not alone determinative. It was held in *Joseph Carroro*, 29 B. T. A. 646, 650, that where a husband filed a joint return, without objection of the wife, who failed to file a separate return, it will be presumed the joint return was filed with the tacit consent of the wife. * * *

See also *Walter M. Ferguson, Jr.*, 14 T. C. 846; *Hyman B. Stone*, 22 T. C. 893, 900, appeal dismissed. Cf. *Elsie S. Bour*, 23 T. C. 237, 239–240.

The petitioner and her husband, during all of 1951 and at all other times material hereto, were living together as husband and wife. The tax due on a joint return of the petitioner and her husband for 1951 is substantially less than the total tax due if they had filed separate returns for that year. Her husband knew this, fully intended to file a joint return for that year, and to that end requested the petitioner to furnish his accountant with the information pertaining to her income tax liability for 1951. The petitioner knew that she was required to file an income tax return for 1951 and had no intention of failing in that duty. She furnished the required information to Salisbury but she did not sign any return for that year. Salisbury informed her at the time that he had prepared a return, had signed her name to it, and it had been sent in.

Salisbury incorporated the information furnished him by the petitioner in a joint return for the petitioner and her husband, it bore the names of the husband and of the wife, it included the income, deductions, exemptions, and credits of each, and signed to it were the names of each. The Internal Revenue Service, with which it was filed, had every reason to believe that it was a genuine joint return and proceeded on that basis. The tax computed on that return was less than the total tax withheld from the salaries of the husband and of the petitioner. Indeed, the total tax shown on the return was little more than the total tax withheld from the petitioner. A refund of the overpayment was requested on the return, each was entitled to a part of that refund, and a check in payment of that refund, made out to the husband and wife, was sent to them, received by them, endorsed by them, and cashed.

The petitioner testified that "my whole income tax situation was looked after by Mr. Salisbury." Salisbury testified that he told the petitioner that she and her husband should file a joint return for 1951 and "she was for it" and expressed no objection. She claims that she never knew until late in 1953 that the return filed in her name for 1951 had been a joint return, but the refund check should have made her aware of that fact, and on her 1952 return prepared by Salisbury at her request, signed by her, and filed on February 12, 1953, there is a statement indicating that she had filed a joint return for 1951. It is difficult to see how the petitioner could have remained ignorant until the latter part of 1953 that the only return filed in her name for 1951 was a joint return.

The record clearly shows that the petitioner knew immediately after the acts were performed that a return for her for 1951 to which Salisbury had signed her name had been filed, and she acquiesced in those acts since she made no effort to correct or change anything which had been done but was content to accept what had been done as a compliance with the law requiring the filing by her of an income tax return for 1951. She testified that she did not know that the return filed for her was a joint return, but about 3 months thereafter she observed that the check mailed to her and her husband was for a refund of taxes and was made out in the joint names of herself and of her husband. She accepted the benefits of the joint return by endorsing the check and allowing it to be paid. It is only fair to conclude from all of the evidence in this case that the petitioner acquiesced in and gave her tacit consent to the filing of the joint return for 1951 and cannot avoid the consequences of the filing of that return.

The Commissioner, in his determination, has disallowed two deductions claimed on the joint return. The remaining deductions allowed by the Commissioner are less than the standard deduction. The Commissioner in such cases usually gives the taxpayers the benefit of the standard deduction, *Harold R. Johnson*, 17 T. C. 1261, 1264; *Gussie P. Chapman*, 14 T. C. 943, 945, affd. 191 F. 2d 816, certiorari denied 343 U. S. 905, and the same thing should be done here. The petitioner has not shown that any of the other adjustments made by the Commissioner in determining the deficiency was erroneous.

The Commissioner has the burden of proof to show by clear and convincing evidence that a part of the deficiency in this case was due to fraud with intent to evade tax. He has failed to sustain that burden. He called two witnesses who testified that they paid some cash to Russell, but the Commissioner failed to show clearly and convincingly that any cash was received from that source or, if received, that it was not reported on the joint return. The parties stipulated "that a waiver of restrictions was presented to Dr. Heim while he was serving time in federal prison and that he did sign it and that in legal effect on the face of it, it constitutes an admission that he owes the tax and is liable for penalties." Russell testified that he signed the document in the belief that it would enable him to apply for a parole at the end of one-third of his sentence. The evidence in regard to the waiver does not properly sustain the Commissioner's burden of proving by clear and convincing evidence that a part of the deficiency was due to fraud with intent to evade tax in the circumstances of this case. His testimony in this case does not indicate that a part of the deficiency was due to fraud with intent to evade tax.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

BRUCE *J.*, concurs in the result.

———

OPPER, *J.*, dissenting: This is supposed to be "a question of fact," *Arlington F. Brown*, 24 T. C. 256, 265, "the answer" to which is supposed to rest "on a determination of the intent of the taxpayer. *Myrtle O. Calhoun*, 23 T. C. 4 (1954)." *Elsie S. Bour*, 23 T. C. 237, 239.

The factual issue here apparently narrows to whether petitioner should be held to have signed the joint return. If she did not, it was not her return and she would not be liable on it. Regs. 111, sec. 29.51–1. See *McCord* v. *Granger*, (C. A. 3) 201 F. 2d 103. Cases holding that the physical presence of the wife's signature is unnecessary are typi-

fied by *W. L. Kann*, 18 T. C. 1032, 1045, affd. (C. A. 3) 210 F. 2d 247, certiorari denied 347 U. S. 967, where we said: "Petitioner * * * having failed to take the stand, or produce any evidence on her own behalf, has not sustained her burden of proof that these were not joint returns." Of course there would be no denial from her under oath that she had authorized someone else, usually her husband, to sign the return. That is the origin of the "tacit consent" theory. There can be no question here that petitioner did not physically sign the return but it is apparently concluded that she authorized someone to do so for her. She testified repeatedly and unequivocally that she did not authorize or ratify the signing or filing of any return and, as the one who heard and observed the witnesses, I believe her. My finding of fact would accordingly be that she did not sign the return nor authorize its signature, that she did not intend to file a joint return, and that accordingly she did not do so.

The Opinion apparently accepts Salisbury's testimony as true. Some of the factual conclusions can be derived from no other source. Yet at a number of points his testimony conflicted with that of petitioner. As the one who heard and observed the witnesses, I believe petitioner was telling the truth.[1] My findings of fact would accordingly be quite different from those now made by Judges who did not participate in the trial.

It is not clear to me whether the present Opinion presupposes that the petitioner was not telling the truth, or whether even if she was, a joint return must be presumed as a matter of law to have resulted. While it is difficult to be sure what the theory of the present Opinion is, it may be one of misrepresentation or estoppel. The philosophy seems to go like this: A return apparently signed by the wife directly or by her agent was accepted as a joint return by the respondent. He relied on its appearance and acted upon it and, accordingly, any detriment that he or the Treasury suffered must be recovered from the innocent bystander. If this return was unauthorized as a joint return, as I think it was and as in fact the evidence indicates it was,[2] then the missing taxes should have been sought from the husband, who did sign the return. But it does not make a joint return out of

---

[1] This applies, for example, to her statement that she endorsed the refund check without knowing that it came from a joint return and that she received none of its proceeds.

[2] Salisbury testified, for example:

Q. But you didn't deliver anything to Mrs. Heim?
A. No, I never do in the case of a joint return, I deliver it to the people who I get an order on.
Q. And you didn't get an order from Mrs. Heim?
A. No.

one that was separate nor justify imposing this unconscionably heavy burden upon a nonparticipant and no case can be produced to authorize it.

Unless we are making new law and overthrowing the only existing precedents, there are but two other grounds upon which this result could rest if regarded as a legal question. An item of petitioner's income was included on the return when it was filed without her knowledge or consent. This is not enough to create a joint return in the absence of such an intention. *Alma Helfrich*, 25 T. C. 404, 407; *McCord* v. *Granger*, *supra*, at 106; *Elsie S. Bour*, *supra*; *Arlington F. Brown*, *supra*.

Of course petitioner should have filed a separate return. So should the women in the cases cited, but the fact that petitioner had taxable income and failed to file a return does not justify the conclusion, without more, that a joint return was intended. *Arlington F. Brown; Myrtle O. Calhoun; Elsie S. Bour; McCord* v. *Granger*, all *supra*. Petitioner had no deductions of any kind. Her salary, although included by the accountant without her consent or knowledge on the joint return, was subject to withholding. Petitioner had in mind that "generally my withholding just took care of the amount that was due." This seems to me a sufficiently reasonable cause for the omission to file a separate return. Sec. 291, I. R. C. 1939. If it is not, and she is liable for penalties, these would be prescribed by statute as 25 per cent of the tax due—in this case, approximately $5. Instead, the penalty determined against her, including one for a fraud in which concededly she did not participate, was $4,621.20, much more than her total income. But whatever the statutory penalty for failing to file a return if due, the cases cited hold clearly that it does not justify imputing an intention to file a joint return if the disavowal of such an intent is believed.

MULRONEY, *J.*, agrees with this dissent.

———

FISHER, *J.*, dissenting: Judge Opper was the trier of the facts in this case. As such, he had the opportunity to see and hear the witnesses as well as to analyze the record. In his dissenting opinion, he says, in part:

There can be no question here that petitioner did not physically sign the return but it is apparently concluded that she authorized someone to do so for her. She testified repeatedly and unequivocally that she did not authorize or ratify the signing or filing of any return, and as the one who heard and observed the witnesses, I believe her. My finding of fact would accordingly be that she did not sign the return nor authorize its signature, that she did not intend to file a joint return, and that accordingly she did not do so.

In my opinion, the views of the trial Judge on the facts should not be disturbed in the absence of clear error. I find no such error here and, in my judgment, the opinion of the majority fails to establish any.

TIETJENS and MULRONEY, *JJ.*, agree with this dissent.