JEREMY H. PEIRCE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Peirce v. Commissioner
Docket No. 337-80.
United States Tax Court
T.C. Memo 1982-154; 1982 Tax Ct. Memo LEXIS 595; 43 T.C.M. (CCH) 900; T.C.M. (RIA) 82154; March 25, 1982. Jeremy H. Peirce, pro se. Sara Coe, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $ 3,811.75 deficiency in petitioner's 1975 Federal income tax and asserted an addition to tax of $ 897.20 under section 6651(a). [1] After concessions, [2] the sole issue for decision is whether petitioner filed a joint Federal income tax return for the 1975 taxable year. [3]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner *596 Jeremy H. Peirce resided in Arlington, Virginia, when he filed his petition in this case. Petitioner and his former wife, Mary C. Peirce (hereinafter Mary), were married on August 2, 1952. In May 1974, they separated, but never executed a formal separation agreement. On April 28, 1976, petitioner and Mary were divorced. During the years of their marriage prior to their separation, petitioner and Mary had always filed joint Federal income tax returns. Generally, petitioner prepared the return and Mary reviewed it before it was filed. After their separation, however, this procedure changed. In 1975, petitioner asked Mary if she would file a joint return for 1974 and she responded, "Why should I?" Petitioner told her that it would be financially beneficial to both of them. Thereafter, the preparation of their 1974 joint return turned into a rather troublesome process with Mary requiring petitioner to make a number of minor changes in the return he had prepared before she would sign it. Eventually, she told petitioner to sign the return, leave it with her, and she would file it. Petitioner agreed and she did in fact file their 1974 joint return. In early 1976, Mary made *597 petitioner go through a similar set of bothersome exercises with respect to the preparation of a joint return for 1975. Initially, petitioner forwarded a draft of their 1975 joint return and various supporting records to Mary through their attorneys. Thereafter, Mary informed petitioner that she wanted to make some changes in the draft he had prepared, and if he wanted her to file jointly, he would have to come to her house and sign a modified version of their 1975 joint return which she would prepare. When petitioner signed the modified version of their 1975 joint return, Mary refused to give him a copy thereof. At that time, petitioner asked Mary when she would file the return and she told him that she would file it when she was ready. Over the next few weeks, petitioner called Mary a number of times to remind her to file the return. During a telephone conversation in June 1976, Mary told petitioner that she had filed the return. He asked for a copy of the return, but Mary told him that he would get a copy when she was ready to send him one. Since petitioner did not receive a copy of the return, he telephoned Mary again in July and August. In response to further questioning *598 with respect to whether she had filed the return, her responses became more indirect, asking petitioner whether he was worried. In october or November 1976, Mary told petitioner that she had not filed the return. After he learned that Mary had not filed the return, petitioner asked his attorney for advice. His attorney suggested that he file a joint return with only his signature and append an explanatory letter to the return.In November 1976, petitioner filed a 1975 tax return, specifying a filing status of "married filing jointly." The names "Jeremy H. and Mary C. Peirce" appeared in the caption, but the return was only signed by petitioner. Petitioner attached a letter to the return stating that his former wife had promised to file a joint return but had failed to do so and that he had been unable to get her signature on the enclosed return. The modified version of the 1975 joint return which petitioner signed but Mary failed to file was prepared by her from the draft of their return which petitioner had given her and information she had in her own records to which petitioner had no access. In preparing her version of their 1975 joint return, Mary made only minor changes *599 in petitioner's draft. [4] Since that draft and the return that petitioner eventually filed were substantially the same, Mary's version of the return and the return actually filed differed in only minor respects due to petitioner's inability to obtain access to Mary's records. The return filed by petitioner reported a tax liability of $ 8,036.58, while Mary's version reported a tax liability of $ 7,918.17. [5] Petitioner's draft of their return and the one that he actually filed each reflected items of income and deduction of both Mary and petitioner. Mary never filed a separate income tax return for 1975. In the notice of deficiency respondent determined that petitioner had not filed a joint return for 1975 and must use the tax rates for married persons filing separately. OPINION We must decide whether petitioner filed a joint tax return for 1975. If so, he was entitled to use the tax rates for married persons filing joint returns. Respondent *600 maintains that petitioner did not file a joint return for 1975 because Mary never signed the return, was not asked to sign the return or even informed that the return was being filed, would not have signed the return because it was incorrect, and has since refused to ratify the return. Consequently, respondent concludes that Mary did not have the necessary intent to file the return as a joint return. Petitioner, on the other hand, argues that Mary intended to join in the filing of a joint return, but failed to execute their joint return for reasons wholly unrelated to the return itself. Therefore, petitioner insists that the return he filed for 1975 constitutes a joint return. For the reasons set forth below, we hold for petitioner. It is well settled that the failure of one spouse to sign a return will not preclude its treatment as a joint return where both spouses intended to file the return as a joint return. Estate of Campbell v. Commissioner,56 T.C. 1 (1971); Federbush v. Commissioner,34 T.C. 740 (1960), affd. per curiam 325 F. 2d 1 (2d Cir. 1963); Heim v. Commissioner,27 T.C. 270 (1956), affd. 251 F. 2d 44 (8th Cir. 1958). *601 Whether the spouse intended to file a joint return is a question of fact. Estate of Campbell v. Commissioner,supra;Federbush v. Commissioner,supra.
Petitioner has the burden of proving that the return he filed for 1975 constituted a joint return. Rule 142(a), Tax Court Rules of Practice and Procedure.
After carefully weighing all of the evidence in the instant case, we are convinced that petitioner has satisfied his burden of proof. Prior to their separation, petitioner and Mary had always filed joint tax returns. While Mary had taken an active role in the preparation of their tax returns to the extent that she reviewed the returns prepared by petitioner prior to filing, there is no indication that there were any quarrelsome confrontations between them with respect to the preparation of the returns. After their separation, however, Mary developed a different attitude. It appears that she began to use the preparation and filing of their tax return as a means to irritate petitioner. With respect to their 1974 return, Mary requested a number of changes in the draft prepared by petitioner, but eventually filed the return which she *602 had made petitioner sign and leave with her. A very similar sequence of events occurred with respect to their 1975 return, except Mary failed to file that return. Although Mary may have wanted to use the return preparation process as a means to make petitioner's life miserable, the record establishes that she had no desire to depart from their long-standing practice of filing joint returns. Significantly, she never filed a separate tax return for 1975. Furthermore, the record indicates that she had little taxable income of her own and probably received most of her support from petitioner. The version of the return prepared by Mary did reflect some changes that she had made in petitioner's draft but such changes were minor and consisted mainly of itemized deductions that she had compiled from her own records. Moreover, the draft return prepared by petitioner and the one actually filed each contained items of income and deduction of both petitioner and Mary; a factor which has been relied on to support the conclusion that a joint return was filed. See Federbush v. Commissioner,supra at 756; Howell v. Commissioner,10 T.C. 859 (1948), affd. *603 per curiam 175 F. 2d 240 (6th Cir. 1949). Since Mary made only minor changes in petitioner's draft, we also consider this factor relevant. While Mary clearly conducted the preparation of their return in a manner best suited to make petitioner squirm, there is no credible evidence that she did not intend to file a joint return. To the contrary, she had indicated to petitioner that she would file their 1975 return just as she had filed their 1974 return, and she never told him that she was not willing to file a joint return. Moreover, at the trial of this case Mary testified that she had intended to file as a joint return the version of the 1975 return that she had prepared. Unfortunately, neither she nor respondent offered any explanation for her failure to file that version of the return. Despite her admitted intent to file her version of the 1975 return as a joint return, Mary testified that she never intended that the return prepared and filed by petitioner be filed as a joint return. According to Mary's testimony, petitioner never showed her the return he filed and even if he had she would not have signed it because it was incorrect. Under the circumstances herein, *604 we cannot accord any weight to Mary's testimony regarding her intent. First, petitioner's failure to show the return he filed to Mary and ask her for her signature is understandable considering the sequence of events that preceded the filing. In so doing, he would simply have given Mary the opportunity to use her signature to make him squirm a bit more. Second, Mary's version of the return and the return filed by petitioner differed in only minor respects. Mary had seen the draft return that petitioner prepared, which was substantially the same as the return actually filed, and had made only minor changes therein. Finally, we consider Mary's testimony that she intended to file her version of the return as a joint return virtually conclusive evidence of her intent to file jointly considering the slight differences between her version and that filed by petitioner. Indeed, in light of such testimony, we can only attribute her avowed lack of intent to file petitioner's version of the return to her ill will for him. This Court has previously held that even a spouse's outright refusal to sign the return does not necessarily preclude the return from qualifying as a joint return. *605 Federbush v. Commissioner,supra. In Federbush, the husband and wife were experiencing some personal difficulties when he asked her to sign the return, and she refused to sign it. Since the refusal was on the last day for filing the return, he signed her name and filed the return. We found that the return so filed was a joint return, stating: There is no indication of record, even in Sylvia's own testimony, that her refusal to sign the return was because she did not wish to file a joint return or that she did not intend for it to have effect as a joint return when it was signed for her by Irving and filed. * * * [W]e are persuaded that Sylvia's refusal to sign was due to matters wholly unrelated to the filing of the return and that she had no intention that the 1944 return should actually be different from the returns filed for other years. Federbush v. Commissioner,supra at 757-758. [6]
*606 Although Mary's conduct with respect to the preparation of a tax return for 1975 was tantamount to a refusal to sign the return, based on the peculiar facts of this case, we are convinced that she had the necessary intent to file jointly. Her conduct was grounded in matters wholly unrelated to the filing itself. Accordingly, we hold that petitioner was entitled to compute his 1975 income taxes using the tax rates for married persons filing joint returns. To reflect the foregoing, Decision will be entered for the petitioner.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. Respondent conceded the sec. 6651(a) addition to tax at trial. ↩
3. The resolution of this issue will determine whether the other adjustments made in the statutory notice of deficiency were correct.↩
4. Such changes consisted almost entirely of additional itemized deductions Mary had compiled from her own records. ↩
5. Since a total of $ 8,301.70 was withheld from petitioner's wages for 1975, both returns claimed a refund.↩
6. See also Riportella v. Commissioner,T.C. Memo. 1981-463, on appeal (2d Cir., Nov. 24, 1981). In Riportella, the husband and wife were separated and the wife attempted to use her signature on a joint return as a bargaining chip in the divorce process. When the husband refused to do anything in exchange for her signature, she refused to sign the return. For the year in issue, the wife had no taxable income and the husband was her sole source of support. In prior years, they had filed joint returns as a matter of course. Relying on Federbush v. Commissioner,34 T.C. 740 (1960), affd. per curiam 325 F. 2d 1↩ (2d Cir. 1963), the Court held that the return filed without her signature was a joint return.