ORIS M. SCHNEIDER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schneider v. Commissioner
Docket No. 9289-78.
United States Tax Court
T.C. Memo 1982-323; 1982 Tax Ct. Memo LEXIS 423; 44 T.C.M. (CCH) 87; T.C.M. (RIA) 82323; June 9, 1982. Bernard L. McAra, for the petitioner. Patrick J. Gray, Jr., for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in the joint Federal income tax of John P. Schneider (deceased) and Oris M. Schneider (petitioner) in the amount of $ 4,940.17 for the calendar year 1975. The issue for decision is whether petitioner filed a joint income tax return with her husband for the taxable year 1975. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in Flushing, Michigan, at the time of filing her petition in this case. A return was *425 timely filed for the year 1975 in the names of petitioner and her husband with the Internal Revenue Service Center, Covington, Kentucky. The Internal Revenue Service treated the return as a joint Federal income tax return of the named individuals. Petitioner and Mr. Schneider were married on June 11, 1949, and lived as husband and wife until on or about May 1, 1976. They elected to file joint Federal income tax returns for each of the taxable years from 1949 through 1974. In the preparation of these returns, petitioner relied exclusively upon her husband, who was a graduate of the University of Detroit Law School. Prior to 1970, petitioner had signed all of their joint returns. However, for the taxable years from approximately 1970 until 1973, Mr. Schneider did not bring the returns home for petitioner's signature and she did not sign those returns. During 1975, Mr. Schneider was a self-employed general agent for Maccabees Mutual Life Insurance Co. (Maccabees), whose principal business offices were located in Southfield, Michigan. In his capacity as a general agent for Maccabees, Mr. Schneider dealt principally in the sale of life insurance contracts, annuities, health insurance, *426 and pension plans from his business office located in Saginaw, Michigan. Mr. Schneider operated his business as a sole proprietorship and maintained his books and records on the cash basis method of accounting. For the calendar year 1975, Maccabees paid Mr. Schneider $ 33,008.67 in commissions attributable to policies for various insurance or pension business written by him. Petitioner had no knowledge of the books and records maintained by Mr. Schneider with respect to his business and she accepted as correct the income and expense figures attributable to the business which were reported on their joint Federal income tax returns. Petitioner was employed by St. Joseph Hospital, Flint, Michigan, as a registered nurse during the entire calendar year 1975. In January 1976, petitioner personally picked up her 1975 Form W-2 along with her bi-weekly paycheck at the hospital. The Form W-2 stated that petitioner received income in the form of wages from St. Joseph Hospital in the total amount of $ 12,879.06 in 1975 and that $ 1,278.91 in Federal income tax was withheld. Petitioner, as she had done in prior years, gave her Form W-2 from the hospital to her husband, so that he could *427 prepare their 1975 income tax return. Although she had warned her husband the prior year that she would not give him her Form W-2 unless she had a chance to look at the forms, she did not do so in 1976. Petitioner also provided her husband with the necessary information with respect to various expenditures which she had made in 1975 which were deductible for Federal income tax purposes as itemized deductions. As she and Mr. Schneider were having marital difficulties during 1975, petitioner was responsible for her own expoenditures and paid most of the household expenses. Mr. Schneider prepared a Form 1040 which listed their filing status as "Married filing joint return." The return listed petitioner's income and her Form W-2 from St. Joseph Hospital was attached to the return. Mr. Schneider also prepared a Schedule C Profit or (Loss) from Business or Profession. He listed his gross receipts for sales as $ 33,008.67 less returns and allowances of $ 14,074.36 for a total gross income of $ 18,934.31. From this amount he listed total business deductions of $ 21,881.31 which left a net loss of $ 2,947. After this loss was taken into account, petitioner and her husband claimed a *428 refund on their Form 1040 of $ 1,278.91. Petitioner did not actually see this return before it was filed nor did she sign the return. The signature which did appear on the return was apparently made by someone else at Mr. Schneider's direction. Petitioner had planned on signing the income tax return if the return showed that there was not any additional money due the Internal Revenue Service. She had adopted this position because she felt that due to the withholding of tax on her wages, she had paid all of the income tax due on her salary. Petitioner never did actually see the joint return prior to the time it was filed and learned that the return had been filed without her signature approximately 1 month to 6 weeks after she had given her husband her Form W-2. She did not notify the Internal Revenue Service of this fact. On April 9, 1976, the Internal Revenue Service issued a U.S. Treasury check in the names of petitioner and Mr. Schneider in the amount of the refund claimed on their return of $ 1,278.91. The check was sent to their residence in Flushing, Michigan. At her husband's direction, petitioner personally endorsed the refund check which she knew was based on their *429 joint return. Mr. Schneider negotiated the check and received all of the proceeds, none of which were ever given to petitioner. Petitioner did not file a separate income tax return for the year 1975. Petitioner and Mr. Schneider began experiencing marital difficulties in 1971. On May 11, 1976, petitioner filed a complaint for divorce and the divorce was granted on November 22, 1976. The Default Judgment of Divorce entered on November 22, 1976, contained only one reference to the income tax liability of the parties which provided that Mr. Schneider agreed that petitioner would not be liable for any tax deductions claimed with respect to a Chriscraft boat. There were no other provisions concerning the Federal income tax liability of the respective parties. On December 8, 1976, Mr. Schneider died from natural causes. In his notice of deficiency, respondent determined that the deduction from gross receipts of $ 14,074.36 for "returns and allowances" was not allowable. Respondent also disallowed a portion of the mileage expenses claimed and imposed a self-employment tax on the resulting profit, after adjustment, from Mr. Schneider's insurance agency. OPINION Petitioner *430 stipulated at trial that the underlying adjustments and the resulting deficiency determined by respondent are correct and that the only dispute is whether petitioner is personally liable for the deficiency. Section 6013(a) [2] provides that a husband and wife may file a joint return. Section 6013(d)(3) provides that if a joint return is filed, the liability for the tax is joint and several. It is well settled that the failure of one spouse to sign a return will not prevent a finding that the return constituted a joint return. Hennen v. Commissioner,35 T.C. 747, 748 (1961); Heim v. Commissioner,27 T.C. 270 (1956), affd. 251 F.2d 44 (8th Cir. 1958). The factual question presented is whether petitioner intended to file a joint return. Estate of Campbell v. Commissioner,56 T.C. 1, 12 (1971); Federbush v. Commissioner,34 T.C. 740, 755-756 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963). Since the Commissioner treated the return as a joint return, the burden is upon petitioner to show to the contrary. Welch v. Helvering,290 U.S. 111 (1933). *431 Based on all of the evidence presented, we conclude that petitioner intended to file a joint return. First, petitioner had a long history of filing joint returns with her husband. During at least 3 years prior to the year here in issue, petitioner knew that she did not sign their returns and that, instead, her husband had directed someone else to sign her name. Petitioner never participated in the preparation of the returns and merely gave her husband her Form W-2 each year so that he could complete the forms and send them in. In addition, petitioner did not file any separate return for the year 1975 nor did she inform the Internal Revenue Service that her signature had been forged and she did not intend to file a joint return. Petitioner testified that the only reason she wanted to actually see the return for the taxable year 1975 was to make sure that there was no additional tax liability shown on the return. This was important to her because she felt that through withholding on her wages, she was paying her share of the joint income tax liability and did not want to be responsible for any additional taxes due which were attributable to her husband's income. She also stated *432 that, if the actual return had been submitted to her by her husband, she would have signed it. Finally, it is important to note that a refund check of the amount claimed as a refund on the joint return was sent to petitioner's and Mr. Schneider's personal residence. Mr. Schneider represented to her that the check was their refund of their 1975 income tax and petitioner personally endorsed the check. We have previously held that a taxpayer's signature on a refund check based on the information stated in a joint return is highly indicative of the fact that the taxpayer acquiesced in the filing of a joint return. Heim v. Commissioner,supra at 274. [3]
*433 Decision will be entered for the respondent.
Footnotes
1. In an amendment to his answer, respondent determined that if we should conclude that petitioner did not file a joint return, petitioner was liable for a deficiency based on the calculation of petitioner's taxes under the applicable rates for a married person filing separately and an addition to tax imposed under sec. 6651(a), I.R.C. 1954↩. In view of our decision herein that petitioner did file a joint Federal income tax return, we do not address respondent's alternative claims.
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩
3. For the first time on brief, petitioner argues that she is protected from liability under sec. 6013(e) as an innocent spouse. Issues raised for the first time on brief are not deemed to have been properly raised in the pleadings and such issue is therefore not before the Court. Rule 30, Tax Court Rules of Practice and Procedure. Even if we were to consider such issue, which we will not, petitioner has not satisfied all three conditions of sec. 6013(e)(1) and, accordingly, relief under that provision would not be available to her. See Estate of Jackson v. Commissioner,72 T.C. 356, 362 (1979). Respondent in this case determined the deficiency on the basis that certain deductions claimed on the joint return were not allowable and at no time has argued that petitioner or her husband had omitted income. See sec. 1.6013-5(d), Income Tax Regs. See also Resnick v. Commissioner,63 T.C. 524↩ (1975).