FRANK G. BOYLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Boyle v. Commissioner
Docket No. 1837-92
United States Tax Court
T.C. Memo 1994-294; 1994 Tax Ct. Memo LEXIS 297; 67 T.C.M. (CCH) 3136; June 27, 1994, Filed *297 Decision will be entered under Rule 155. For petitioner: Thomas E. Redding. For respondent: Andrew M. Tiktin. FAY
FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined deficiencies in income tax due from petitioner for the 1980, 1981, and 1982 taxable years as follows: Additions to Tax Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)
6653(a)(1)
6653(a)(2)
6661
1980
$ 43,242
$ 2,162.10
-- --
$ 10,810.50
1981
44,800
-- $ 2,240
[1]
11,200.00
1982
139
-- -- --
-- All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. After concessions by the parties, the sole issue for decision is whether petitioner and his former wife filed a joint income tax return for the 1981 taxable year. A stipulation of settled issues and a stipulation of facts, with joint exhibits, were filed on May 10, 1993, and May 12, 1993, respectively. By this reference, these facts are so found and incorporated herein. Factual Background
At the time the petition *298 herein was filed, petitioner resided in Houston, Texas. Petitioner and his former wife, Virginia Boyle (Mrs. Boyle), were married in August 1966 and remained married thereafter for almost 21 years until their divorce in June 1987. Joint tax returns were filed by petitioner and Mrs. Boyle for the taxable years 1966 through 1980, and 1982 through 1986. Petitioner, during 1981, owned and operated his own home construction company, International Homes, Inc. Mrs. Boyle was employed by Capital Bank during 1981. During 1981, and through April 1982, Mrs. Boyle served as a loan officer and vice president to Capital Bank. The 1981 return reported income from Mrs. Boyle's employment at Capital Bank in the amount of $ 33,430.00. Interest and dividend items of income attributable solely to Mrs. Boyle, and jointly to Mrs. Boyle and petitioner were reported on the 1981 return. Exemptions were also claimed for both petitioner and Mrs. Boyle on the 1981 return. In addition, the appropriate box was checked to indicate "married filing jointly", the tax was computed using joint rates, and the names and Social Security numbers of both spouses appeared at the top of the return. In other words, *299 although Mrs. Boyle did not sign the return, it was otherwise in the form of a joint return. Petitioner did not file any other Federal income tax return for the 1981 taxable year. Mrs. Boyle did not file any other Federal income tax return for the 1981 taxable year. From 1966 through 1980, petitioner and Mrs. Boyle utilized the same process for preparation and filing of their joint Federal tax returns. This system was originally established prior to petitioner's marriage to Mrs. Boyle. Petitioner would accumulate all tax-related information during the year in a drawer in his desk, such desk being located in the study. Once petitioner and Mrs. Boyle were married, petitioner asked Mrs. Boyle to accumulate her tax information in that drawer as well. When it became time to prepare the tax return petitioner would take all the information out of the drawer and deliver it to his Certified Public Accountant (C.P.A.) who would then prepare the return for that particular year. Once the return was prepared, the C.P.A. would then cause it to be delivered to petitionerer, at which time petitioner, after affixing his own signature, would allow Mrs. Boyle to examine the return before she *300 affixed her signature to it. Once Mrs. Boyle had examined the return and executed it, the return would be mailed to the Service Center for processing. This procedure was partially followed with respect to the 1981 tax return with petitioner delivering, some time in early 1982, the pertinent information to Jess Kaps (Mr. Kaps), [1] petitioner's and Mrs. Boyle's C.P.A. After Mr. Kaps had prepared the Boyles' 1981 return, he caused it to be delivered, ready for filing, to petitioner. In April 1982, however, Mrs. Boyle's absence caused the latter part of the process to break down. In early April 1982, before the 1981 return had been completed and delivered by Mr. Kaps to petitioner, Mrs. Boyle was forced to leave town and travel to Wichita Falls, Texas, to attend to a sick parent. [2] Mrs. Boyle was still absent on April 14 and, therefore, unable *301 to personally read over and execute the 1981 return. Petitioner affixed his signature to the 1981 return on April 14, 1982. During the evening of April 14, 1982, petitioner called Mrs. Boyle at her parents' home in Wichita Falls and informed her that he was in possession of their completed 1981 return, and that, because a request for an extension had not been filed, the 1981 return needed to be executed by her and mailed. Mrs. Boyle made it clear to petitioner that she wanted to review the return, as she had for the prior 15 years, and that it was not possible for her to fly home in order to review and execute the return. Finally, upon being told by petitioner that petitioner and Mr. Kaps had already executed the return, and recalling that nothing significant had happened during the year, Mrs. Boyle verbally authorized petitioner to execute and submit the 1981 return on her behalf. This was the only time during the course of their marriage that Mrs. Boyle did not herself review and execute their joint return. *302 On April 15, 1982, petitioner, having already executed the 1981 return, placed the return on top of a "do" pile located on his desk in his office. At this point petitioner testified that he did not recall the events surrounding the final execution, involving Mrs. Boyle's signature, and submission of the 1981 return. Judy McFarland (Ms. McFarland) was petitioner's bookkeeper and an officer, acting as secretary/treasurer, at International Homes, Inc., during the period here at issue. At the time of trial, Ms. McFarland was employed by petitioner and had worked for petitioner in one capacity or another for a continuous period of 14 years. Additionally, Ms. McFarland is a second cousin to Mrs. Boyle, their grandmothers having been sisters. It is our conclusion, despite the confusion in the record, that Ms. McFarland signed Mrs. Boyle's name to the 1981 return on April 15, 1982, rather than April 14, 1982, and then caused this return to be mailed to the proper service center. Although Mrs. Boyle did not remember exactly when she finally reviewed the 1981 return, it appears that she did review the 1981 return approximately 6 months after it was filed. At that time she noticed that *303 a refund of $ 61,227 had been claimed on the return. In late 1983 or early 1984, Mrs. Boyle executed a power of attorney in favor of Mr. Kaps, her C.P.A., to deal with tax matters for several taxable years, including the 1981 taxable year. Additionally, on September 19, 1984, Mrs. Boyle executed a Special Consent to Extend the Time to Assess Tax for any Federal income tax due on the 1980 and 1981 returns. On December 9, 1988, Mrs. Boyle executed a form granting a power of attorney to Leonard S. Roth [3] to deal with tax matters involving several taxable years including the 1981 taxable year. Discussion
Petitioner argues, in essence, that the 1981 return filed on behalf of petitioner and Mrs. Boyle does not constitute a valid joint return because Mrs. Boyle did not sign it herself. Petitioner asserts several additional alternative positions which we disregard as without merit. Respondent argues that, despite the *304 absence of Mrs. Boyle's actual signature on the 1981 return, Mrs. Boyle intended to file the joint return which in fact was filed, and, therefore, a valid joint return exists for the 1981 taxable year. We agree with respondent. The petitioner bears the burden of establishing that he and his former wife did not file a joint return for the 1981 taxable year. Rule 142(a); Howell v. Commissioner, 10 T.C. 859, 866 (1948), affd. 175 F.2d 240 (6th Cir. 1949). The rule regarding joint returns and the signatures affixed to them has been long settled in that where an income tax return is intended by both spouses to be a joint return, the absence of the signature of one spouse does not prevent their intention from being realized. Estate of Campbell v. Commissioner, 56 T.C. 1, 12 (1971); Federbush v. Commissioner, 34 T.C. 740, 757 (1960), affd. 325 F.2d 1 (2d Cir. 1963); Kann v. Commissioner, 18 T.C. 1032, 1045 (1952), affd. 210 F.2d 247, 251-252 (3d Cir. 1953); Sharwell v. Commissioner, 419 F.2d 1057, 1059 (6th Cir. 1969). *305 The question of the nonsigning spouse's intent is one of fact. Estate of Campbell v. Commissioner, supra at 12. Petitioner cites a number of cases to support his position. We find these cases clearly distinguishable from the immediate case. In fact, one such case which petitioner cites, Esposito v. Commissioner, T.C. Memo. 1991-262, clearly supports the decision we make in this case in that we find the record clearly establishes Mrs. Boyle's intent to file the joint return here at issue. Furthermore, petitioner's arguments that the line of cases supporting our decision here was erroneously decided and/or is inapplicable to the case at bar are without merit. Petitioner testified, and we believe, that, at the time petitioner affixed his signature to the 1981 joint return, petitioner fully intended to file the 1981 return as a joint return. Mrs. Boyle testified, and we believe, that in April 1982 she fully intended to file the 1981 return as a joint return. The 1981 joint return that petitioner and Mrs. Boyle intended to file was actually filed in April 1982. There was conflicting testimony at trial with respect *306 to how the signature purporting to be that of Mrs. Boyle appeared on the 1981 return. Petitioner testified that Mrs. Boyle did not authorize him to sign the return on her behalf, that he did not sign it on her behalf, and that, after he signed his own name to the return, he placed the return on his desk and does not remember what happened to it thereafter. Ms. McFarland testified that she signed the return on behalf of Mrs. Boyle after receiving Mrs. Boyle's authorization, at which time she then caused the return to be properly mailed. Mrs. Boyle denies authorizing Ms. McFarland to sign the return on her behalf but testified that she authorized petitioner to do so. Petitioner focuses on this conflict for purposes of arguing that there is not a valid 1981 joint return. We believe that the most likely chain of events was that Mrs. Boyle authorized petitioner to execute the return on her behalf, at which time petitioner thereafter directed Ms. McFarland to sign Mrs. Boyle's name and have it mailed. After analysis of the record and the applicable case law, however, we deem this conflict to be irrelevant to the ultimate issue at hand and find that, regardless of how Mrs. Boyle's *307 "signature" came to be on the return, be it by Judy McFarland at petitioner's direction after Mrs. Boyle authorized petitioner to execute the return on her behalf, or be it by Judy McFarland with Mrs. Boyle's direct authorization, the result remains the same: Mrs. Boyle was apprised of the contents of the 1981 return, and she intended that it be executed and filed as a joint return on her behalf. See Estate of Campbell v. Commissioner, supra; Heim v. Commissioner, 27 T.C. 270 (1956), affd. 251 F.2d 44 (8th Cir. 1958); Douglass v. Commissioner, T.C. Memo. 1984-369; Parker v. Commissioner, T.C. Memo. 1978-23. Our finding that Mrs. Boyle did in fact intend to file the joint return that was actually filed is supported by more than just her direct testimony of her intent. Petitioner and Mrs. Boyle had filed joint returns for 15 consecutive years up to the year at issue and then for the 5 taxable years subsequent to the 1981 taxable year; the 1981 return claimed exemptions on Mrs. Boyle's behalf and contained all of her items of income; *308 and Mrs. Boyle did not file any other return for the 1981 taxable year. Therefore, we find that a valid joint return was filed on behalf of petitioner and Mrs. Boyle for the 1981 taxable year. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the deficiency.↩
1. The record reflects Jess Kaps (Mr. Kaps) as the Boyles' CPA during the years at issue but is unclear as to how many years Mr. Kaps had been preparing the Boyles' returns.↩
2. At the trial, Mrs. Boyle testified that it was her father who was lying ill and needed to be attended to. Petitioner and Judy McFarland testified that it was Mrs. Boyle's mother who was ill. Because the identity of which parent was ill is of no consequence to the outcome of this case, the word "parent" will be used to refer to the ailing individual.↩
3. Leonard S. Roth is Mrs. Boyle's counsel in her related Tax Court case, docket No. 1838-92.↩