T.C. Summary Opinion 2011-139


UNITED STATES TAX COURT


ALVARO N. GALLEGO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12958-10S.               Filed December 28, 2011.


<u>Brian C. Power</u>, <u>Marissa K. Rensen</u>, and <u>Thomas C. Durham</u>, for
petitioner.

<u>Erika B. Cormier</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.[1]  Pursuant to

--------

[1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the year in issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This proceeding was commenced under section 6015 for review of respondent's determination that petitioner is not entitled to relief from joint and several liability with respect to underpayments of Federal income tax reported on his Form 1040, U.S. Individual Income Tax Return, filed for 2003,[2] 2004, and 2005.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. Petitioner resided in Massachusetts at the time the petition was filed.

Petitioner was born in Colombia and later moved to Mexico, where he studied and practiced medicine. Petitioner married Xochitl Lagunes Viveros Gallego (Viveros) in Mexico in 1989, and they had three daughters. Petitioner and Viveros moved to the United States with their children in 1996. Petitioner's medical credentials were not recognized, and he was unable to work as a doctor in the United States.

_____

[2]The parties agree that petitioner's claim for relief for the 2003 taxable year is no longer in issue.

Petitioner worked at various jobs before starting a business as a sole proprietorship called Norman's Cleaning. Petitioner was primarily responsible for cleaning clients' properties, and Viveros was responsible for maintaining the business' financial records and office.

Petitioner and Viveros provided financial documents to a return preparer each February in order to have their Federal income tax return prepared. In years before 2003, petitioner and Viveros customarily signed the return at the preparer's office, and Viveros wrote a check and mailed the Federal income tax return and any payment due to the Internal Revenue Service (IRS). Petitioner and Viveros separated sometime after February 2006. Viveros remained in the marital home with the children, and petitioner lived with various family members.

During the summer of 2006 Viveros informed petitioner that she had not paid the Federal income tax liabilities for 2003 or 2004 and that she had not been paying other personal and business expenses since the separation.[3] At some point, petitioner and Viveros agreed to sell their house to pay debts. On August 28, 2006, they received $39,059 from the sale of the house. On the following day they deposited $41,228.55 into their joint checking

---

[3]On May 29, 2006, the IRS began collection action against petitioner by issuing a Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing for the 2003 and 2004 joint liability.

account at Workers' Credit Union.  Between August 29 and November 19, 2006, Viveros withdrew approximately $17,000 of the proceeds to pay various expenses, including clothing, food, entertainment, travel, and lodging.  On November 20, 2006, Viveros withdrew $21,700 from the couple's joint checking account and moved to Mexico with the three children.

After Viveros left with the children, petitioner learned that a joint 2005 Federal income tax return had not been filed.  Soon after learning this, petitioner took steps to have a 2005 return prepared and filed.[4]  Petitioner did not communicate with Viveros about the preparation or filing of this return as a joint return, and Viveros did not sign the 2005 Federal income tax return.  Viveros' 2005 income was not reported on the return.[5]

---

[4]Petitioner testified that a 2005 Form 1040 was prepared and executed by both himself and Viveros in February 2006.  The record is unclear regarding whether the 2005 return was actually prepared and executed as petitioner suggested.  Petitioner testified that after Viveros left for Mexico he gathered some of the documents previously used to prepare the 2005 return and took them to the same individual who had prepared the couple's returns in prior years.  There is no independent or documentary evidence to support the assertion that a 2005 return had been previously prepared and executed.  If the 2005 return had been prepared in February 2006, it would seem likely that the preparer would have had a copy of the return or some data related to its preparation.

[5]Although Viveros worked at Norman's Cleaning, there is no independent evidence such as a Form W-2, Wage and Tax Statement, or Form 1099-MISC, Miscellaneous Income, in the record which reflect that Viveros had income for the years in issue.  Petitioner's counsel asserts that Viveros was paid a salary in 2005.

On or about March 26, 2007, petitioner filed the 2005 Federal income tax return, reporting a balance due.[6]

Petitioner filed for divorce from Viveros in October 2008. The divorce was finalized in 2009. The court in that proceeding found that Viveros withdrew $21,700 without petitioner's knowledge and ordered Viveros to repay petitioner $10,950.75. The judgment of divorce nisi stated that petitioner and Viveros share the tax debt equally.[7] Petitioner claims in his amended petition that he is entitled to a refund of the $11,679.29 he has paid toward the 2004 liability.[8]

On June 9, 2009, petitioner filed Form 8857, Request for Innocent Spouse Relief, requesting relief from joint and several liability for taxable years 2003,[9] 2004, and 2005. Attached to the Form 8857 was the complaint for divorce dated October 17, 2008, in which petitioner filed suit for divorce against Viveros in Massachusetts.

---

[6]Petitioner paid this amount in installments beginning on June 9, 2007. Although petitioner acknowledged that Viveros did not sign the return, the IRS accepted and filed the return as a joint return. Executed returns for 2004 and 2005 are not a part of the record.

[7]The judgment of divorce nisi listed the Federal and State tax debt at the time of divorce as $17,388.04.

[8]The parties have agreed that if petitioner is entitled to sec. 6015(f) relief, he is entitled to a refund of $11,679.29.

[9]As previously indicated, the parties have agreed that taxable year 2003 is not at issue.

## Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). In certain circumstances, however, a spouse who has filed a joint return may seek relief from joint and several liability under procedures set forth in section 6015. Sec. 6015(a).

Under section 6015(a) a spouse may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability according to provisions set forth in section 6015(c). If a taxpayer does not qualify for relief under either section 6015(b) or (c),[10] the taxpayer may seek equitable relief under section 6015(f). The Secretary has discretion to grant equitable relief to a spouse who filed a joint return with an unpaid tax liability or a deficiency. Sec. 6015(f)(1); sec. 1.6015-4(a), Income Tax Regs. Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that he or

---

[10]Petitioner requested relief under sec. 6015(f). We are satisfied that he is ineligible for relief under sec. 6015(b) or (c). Petitioner does not qualify for relief under sec. 6015(b) because there is no understatement of tax for the years in issue. See sec. 6015(b)(1)(B). Petitioner does not qualify for relief under sec. 6015(c) for 2004 because he requested relief more than 2 years from the beginning of IRS collection activities. See sec. 6015(c)(3)(B). Petitioner is also ineligible for relief for 2005 for the reasons discussed more fully below.

she is entitled to section 6015 relief.  Rule 142(a); <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).  Both the scope and standard of our review in cases requesting equitable relief from joint and several income tax liability are de novo.  <u>Porter v. Commissioner</u>, 132 T.C. 203 (2009).

As directed by section 6015(f), the Commissioner has prescribed procedures for determining whether a spouse qualifies for relief under subsection (f).  The applicable provisions are found in Rev. Proc. 2003-61, 2003-2 C.B. 296.

The revenue procedure sets forth seven threshold requirements before the Commissioner will consider a request for relief under section 6015(f):  (i) The requesting spouse filed a joint return for the taxable year for which he or she seeks relief; (ii) relief is not available to the requesting spouse under section 6015(b) or (c); (iii) the requesting spouse applies for relief no later than 2 years after the date of the IRS' first collection activity after July 22, 1998, with respect to the requesting spouse; (iv) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (v) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (vi) the requesting spouse did not file or fail to file the return with fraudulent intent; and (vii) absent enumerated exceptions, the income tax liability from which the

requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return. Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297. We employ these factors when reviewing the Commissioner's denial. Washington v. Commissioner, 120 T.C. 137, 147-152 (2003); see also Schultz v. Commissioner, T.C. Memo. 2010-233. Respondent asserts that petitioner fails requirements (iii) and (vii), above, for taxable year 2004 and that petitioner fails requirements (i), (iii), and (vii), above, for taxable year 2005.

Two-Year Period of Limitations

Respondent initially asserted that the claim for relief under section 6015(f) was untimely. After trial but before release of this opinion, respondent conceded that the 2-year period of limitations under section 6015(f) does not apply. See Notice 2011-70, 2011-32 I.R.B. 135. In Notice 2011-70, supra, the IRS stated that effective July 25, 2011, it would consider requests for equitable relief under section 6015(f) if the period of limitations on collection provided by section 6502 remained open. See Notice 2011-70, supra; see also sec. 6015(f). Because respondent conceded that the 2-year limitation no longer applies, we need not consider respondent's argument concerning that threshold requirement.

Income Attributable to Requesting Spouse

Respondent asserts that petitioner fails threshold requirement (vii) for taxable years 2004 and 2005. See Rev. Proc. 2003-61, sec. 4.01. Generally, a requesting spouse cannot satisfy this requirement where the income tax liability from which the requesting spouse seeks relief is attributable to income earned by the requesting spouse. There are exceptions to this general rule, and petitioner asserts that he qualifies for one of the exceptions.

Rev. Proc. 2003-61, sec. 4.01(7)(c), 2003-2 C.B. at 297, provides an exception to the seventh requirement:

> If the requesting spouse did not know, and had no reason to know, that funds intended for the payment of tax were misappropriated by the nonrequesting spouse for the nonrequesting spouse's benefit, the Service will consider granting equitable relief although the underpayment may be attributable in part or in full to an item of the requesting spouse. * * *

Furthermore, the IRS will consider relief "only to the extent that the funds intended for the payment of tax were taken by the nonrequesting spouse." Id.

Taxable Year 2004

Petitioner alleges that Viveros misappropriated the funds from the sale of their house and that those funds were intended to pay the tax liabilities for 2003 and 2004 and to pay various unpaid personal and business expenses.

Petitioner and Viveros shared a joint checking account at Workers' Credit Union.  A bank account consists of a promise to pay by the bank to the depositors.  <u>Citizens Bank of Md. v. Strumpf</u>, 516 U.S. 16, 21 (1995).  Under Massachusetts law, "shares and deposits may be received and held in the name of a member [of the credit union] with one or more persons as joint tenants * * * and any part or all of the shares or deposits and dividends or interest represented by joint accounts may be withdrawn, assigned or transferred by any of the individual parties."  Mass. Ann. Laws ch. 171, sec. 39 (LexisNexis 2009).  Misappropriation is the "application of another's property or money dishonestly to one's own use."  Black's Law Dictionary 1013 (7th ed. 1999).  Since each joint account holder may withdraw any or all of the funds held in the account, we do not conclude that Viveros' withdrawal of the funds from this account constituted a misappropriation.

The funds from the sale of the house were deposited by petitioner and Viveros in their joint account and remained in the account from August to November 2006.  Petitioner had access to the funds in the joint account.  The record reflects that petitioner did not pay or attempt to pay the tax liabilities for 2003 or 2004, even after the funds from the sale of the house

were deposited into the joint account.[11]  Petitioner has also failed to establish that the proceeds from the sale of the house were specifically earmarked for the payment of the 2003 and 2004 tax liabilities and not to pay marital debts generally.  Also, it is not at all clear that any funds withdrawn by Viveros were for her benefit rather than the benefit of the three children.

Petitioner has failed to meet the exception for the seventh threshold requirement and is not eligible for innocent spouse relief with respect to taxable year 2004.  Since petitioner has failed to satisfy the threshold requirements, we need not consider the terms of the divorce decree as a factor weighing for or against relief.

Taxable Year 2005

Respondent asserts that petitioner fails to satisfy the threshold requirements for taxable year 2005 in that Viveros did not file a joint return.  Petitioner asserts that because he and Viveros had initially prepared and signed a joint Federal income tax return for 2005, it was their intent to file jointly although the initially prepared joint Federal income tax return was not actually filed.  Petitioner has not satisfied the Court that the parties intended to file a joint income tax return for 2005.

---

[11]As previously indicated, petitioner did not learn that the 2005 tax liability had not been paid until after Viveros moved to Mexico in November 2006.

In general, a joint return must be signed by both spouses. Sec. 1.6013-1(a)(2), Income Tax Regs. In circumstances where both spouses intend to file a joint return, the failure of one spouse to sign the return will not preclude its treatment as a joint return. Estate of Campbell v. Commissioner, 56 T.C. 1, 12 (1971). Whether the nonsigning spouse intended to file a joint return is a question of fact. Id.; Federbush v. Commissioner, 34 T.C. 740, 755-758 (1960), affd. 325 F.2d 1 (2d Cir. 1963); Heim v. Commissioner, 27 T.C. 270, 273-274 (1956), affd. 251 F.2d 44 (8th Cir. 1958).

The Court may look to whether the taxpayers customarily filed joint returns to determine whether a return was intended to be a joint return. Estate of Campbell v. Commissioner, supra at 12. Although not conclusive, the inclusion of a spouse's income on a return is regarded as a factor supporting a conclusion that the return was intended as a joint return. Federbush v. Commissioner, supra at 756.

Petitioner conceded that Viveros did not sign the 2005 Federal income tax return. Petitioner and Viveros customarily filed joint Federal income tax returns. The record reflects that Viveros was generally responsible for the family and business finances. Assuming that a 2005 return was prepared and executed by Viveros in February 2006, she apparently chose not to file a joint return. When petitioner had the 2005 return prepared, he

was aware that Viveros was living in Mexico; and he could have contacted her via telephone or mail to ask her about filing the return jointly.[12]  Petitioner, however, did not contact Viveros, nor is there anything in the record indicating she agreed or consented to file a joint return for taxable year 2005, and Viveros' income for 2005 was not included on the filed return.

We conclude that petitioner and Viveros did not file a joint Federal income tax return for 2005; and thus petitioner is not entitled to relief under section 6015.  See Raymond v. Commissioner, 119 T.C. 191, 197 (2002).

Even if we were to conclude that the 2005 return was a joint return, petitioner would in any event be unsuccessful in his request for innocent spouse relief for taxable year 2005 because the tax he requests relief from is attributable to his income and he does not qualify for an exception (as previously discussed with respect to 2004).  See Rev. Proc. 2003-61, sec. 4.01(a)(7). Additionally, petitioner does not assert, and we do not find, that Viveros misappropriated funds intended for the payment of the 2005 tax liability.

---

[12]Petitioner had Viveros' address and a family member's telephone number in Mexico that he could have used to communicate with her.

## Conclusion

Petitioner is not entitled to relief from joint and several liability for 2004 because he has not shown Viveros misappropriated funds intended for the payment of the 2004 Federal income tax liability.  Additionally, petitioner is not entitled to relief from joint and several liability for 2005 because petitioner did not file a joint Federal income tax return with Viveros.

To reflect the foregoing,

Decision will be entered

for respondent.