# United States Tax Court

T.C. Memo. 2025-37

JOANNE SALVI VANOVER,
Petitioner,
AND MICHAEL D. VANOVER,
Intervenor

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

―――――――――

Docket No. 11047-22.                                   Filed April 22, 2025.

―――――――――

Joanne Salvi Vanover, pro se.

*Christopher L. Bourell* and John Nevergall (student), for intervenor.

*John D. Davis* and *Nancy P. Klingshirn,* for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JONES, *Judge*:  In this case petitioner, Joanne Salvi Vanover (Ms. Salvi),[1] seeks relief from joint and several liability for federal income tax obligations pursuant to section 6015.[2] Ms. Salvi seeks relief from income tax obligations arising from returns she jointly filed with her former spouse and intervenor in this case, Michael D. Vanover, for taxable years 2017 and 2018 (taxable years at issue). For taxable year

―――――――――

[1] At trial, petitioner requested that the Court address her as Ms. Salvi. Mindful of this request, the Court will refer to petitioner as Ms. Salvi throughout this Opinion.

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulatory references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*2] 2017, Ms. Salvi seeks relief under section 6015(f) from the underpayment of tax shown as due on the joint return. For taxable year 2018, Ms. Salvi seeks relief under section 6015(b), (c), or (f) from a deficiency in income tax attributable to the couple's failure to report various items of income on the return and relief under section 6015(f) from an underpayment of tax shown as due on the joint return.

For the reasons discussed below, we will grant partial relief to Ms. Salvi pursuant to section 6015(c) with respect to the understatement items attributable to Mr. Vanover for taxable year 2018. But we will deny relief pursuant to section 6015(b), (c), and (f) for all other items for the taxable years at issue.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The Administrative Record and First Stipulation of Facts and the Exhibits attached thereto are incorporated herein by this reference. Ms. Salvi resided in Ohio when she timely filed her Petition. Mr. Vanover timely filed a Notice of Intervention. *See* Rule 325.

I.    *Ms. Salvi, Mr. Vanover, and Their Marriage*

Ms. Salvi has a bachelor's degree in political science and a master's degree in human resource management. During the taxable years at issue, and at the time of trial, Ms. Salvi was employed as a human resource professional. At the time of trial, Ms. Salvi earned approximately $85,000 per year. Mr. Vanover attended some university classes, but he did not earn a college degree. During the taxable years at issue, Mr. Vanover was employed as an information technology consultant.

Ms. Salvi and Mr. Vanover were married on September 12, 2015. From the date of their marriage until February 2020, Ms. Salvi and Mr. Vanover resided at a home in Newbury, Ohio. Ms. Salvi was the sole owner and mortgage holder of the Newbury home, which she has lived in for approximately 20 years. Ms. Salvi has two children from a prior relationship that lived with her and Mr. Vanover during the taxable years at issue.

A.    *Financial Management*

During the taxable years at issue, Ms. Salvi and Mr. Vanover did not split household expenses equally. Because Ms. Salvi's two children

[*3] also lived in the home, she paid two-thirds of the living expenses and Mr. Vanover paid one-third. Mr. Vanover's contribution to joint household expenses included a monthly contribution to Ms. Salvi's mortgage. Ms. Salvi was primarily responsible for writing checks and ensuring that the household bills were paid, but Mr. Vanover was separately responsible for paying for his vehicle and car insurance, as well as some medical expenses such as prescription medication.

Throughout their marriage, Ms. Salvi and Mr. Vanover each individually maintained at least one separate bank account, and they also maintained a joint bank account. Ms. Salvi's and Mr. Vanover's respective salaries and other income were deposited into their separate bank accounts. Each of them then transferred some of the amounts deposited into their separate accounts into the joint account.

Payments for electric, gas, and cable bills and, as discussed further below, an installment agreement relating to taxable year 2015, were drafted from the joint bank account. Mr. Vanover knew that the funds in the joint account were used for expenses. But he generally did not know the precise nature or amounts of the expenses and he did not spend any of the money in the joint account. The mortgage payments for Ms. Salvi's home were drafted out of her separate bank account.

B.   *Financial Issues*

Ms. Salvi and Mr. Vanover each individually had financial problems that affected their marriage to varying degrees. Ms. Salvi filed for bankruptcy in 2016, although the details regarding the bankruptcy are not set forth in the record. Mr. Vanover had numerous tax and other financial problems before and during his marriage to Ms. Salvi.

Specifically, Mr. Vanover had outstanding debts to several creditors, including the Internal Revenue Service (IRS), the State of Ohio, former landlords, a utility company, a car dealership, and doctors. He was also delinquent on child support payments. Mr. Vanover did not file Forms 1040, U.S. Individual Income Tax Return, for taxable years 2004 through 2014. Ms. Salvi learned that Mr. Vanover struggled with money management "[p]robably after we'd been married a couple years," i.e., 2017, "because [Mr. Vanover] would get a lot of phone calls for collections" and he "couldn't get credit cards."

[*4] II.    *Tax Filings and Liabilities*

In the decades before her marriage, Ms. Salvi's income tax returns were prepared by her cousin, Patrick DiPietro, a certified public accountant (CPA). After Ms. Salvi and Mr. Vanover were married, Mr. DiPietro prepared joint returns for the couple. Ms. Salvi and Mr. Vanover elected to file joint income tax returns for taxable years 2015, 2016, 2017, and 2018.

During their marriage Ms. Salvi played an important role in facilitating the couple's tax filings. It was "very difficult to get tax stuff done with Mr. Vanover," and Ms. Salvi "had to put [her] foot down and say, we have to get these taxes done." The returns for taxable years 2016, 2017, and 2018 were prepared by Mr. DiPietro once Mr. Vanover "finally gave [Ms. Salvi] his W[–]2s . . . [after she had] begg[ed] for the information."

Although a request for relief from joint and several liability for taxable year 2015 is not at issue,[3] the facts related to taxable year 2015 provide important insights into the instant case. Ms. Salvi and Mr. Vanover filed a joint Form 1040 for taxable year 2015 (2015 joint return) with a balance shown as due, but they did not pay the balance. The 2015 joint return was received by the IRS on October 17, 2016, and processed on November 21, 2016.

Ms. Salvi and Mr. Vanover retained an attorney, Carol Szczepanik, to assist them with matters related to their return and unpaid tax liability for taxable year 2015. On April 6, 2017, Ms. Salvi and Mr. Vanover entered an installment agreement with the IRS for the taxable year 2015 liability. Ms. Salvi and Mr. Vanover each contributed half of the $275 payment to their joint bank account, and the IRS electronically debited the payment from that account.

While working with Ms. Szczepanik to procure an installment agreement for taxable year 2015, Ms. Salvi "began to suspect problems" when Ms. Szczepanik "discovered [that Mr. Vanover] ha[d] a lot of past due taxes." Ms. Salvi inquired about the amount of Mr. Vanover's total unpaid tax liability, although Ms. Szczepanik did not disclose that

---

[3] By Order dated May 10, 2024, the Court granted respondent's Motion to Dismiss for Lack of Jurisdiction and to Strike with Respect to Claim for Relief from Joint and Several Liability for the 2015 Tax Year (Doc. 46).

[*5] information. Sometime after filing for divorce, Mr. Vanover stopped contributing his portion to the installment agreement.

### A.    *Taxable Year 2017*

Ms. Salvi and Mr. Vanover timely filed a joint request for an extension of time to file their return for taxable year 2017, but they failed to timely file a return by the extended deadline. On July 8, 2019, Ms. Salvi and Mr. Vanover filed an untimely joint Form 1040 for taxable year 2017 (2017 joint return). On the 2017 joint return, Ms. Salvi and Mr. Vanover reported adjusted gross income totaling $155,623, total tax liability of $22,432, and an amount due of $2,291.[4] Ms. Salvi and Mr. Vanover did not pay the amount shown as due on the return for taxable year 2017.

The parties have stipulated that during taxable year 2017, Ms. Salvi had income of $89,280, comprising wages of $69,063, dividends of $857, capital gains of $3,674,[5] and a taxable retirement account distribution of $15,686.[6] The parties have also stipulated that Mr. Vanover had income of $71,721, comprising wages of $70,384 and self-employment income of $1,337.[7]

On April 8, 2020, Ms. Salvi filed Form 1040–X, Amended U.S. Individual Income Tax Return, using the same numbers as shown on

---

[4] The parties stipulated that the "joint 2017 Form 1040 . . . reflected a balance due of $3,17[8]." However, as previously stated, the amount shown as due on the Form 1040 for taxable year 2017 is $2,291. The parties' stipulation appears to be inclusive of penalties, additions to tax, and interest, totaling $887, which combined with the amount due of $2,291, equals $3,178.

[5] We further note that $857 of dividends, and the $3,674 of capital gain that the parties stipulated was attributable to Ms. Salvi, were not reported on the 2017 joint return. Respondent did not issue a Notice of Deficiency for taxable year 2017.

[6] The parties stipulated that the pension distribution of $15,686 for taxable year 2017 was attributable to Ms. Salvi. We note that the Form 1099–R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., included in the record lists Mr. Vanover's name, but the income is reflected on Ms. Salvi's tax account transcript and associated with her tax identification number. Given this discrepancy, and in the absence of any contrary evidence, we will defer to the Stipulation. *See Freman v. Commissioner*, T.C. Memo. 2023-10, at *4 n.4. No evidence presented by the parties suggests any nominal ownership issue exists in the present case.

[7] We note that the amount of gross receipts reported on Schedule C, Profit or Loss From Business, for taxable year 2017 totaled $1,338 (a discrepancy of $1), and the net profit or loss reflected on the Schedule C, which was reported on line 12 of the Form 1040, totaled $528.

[*6] the joint Form 1040 filed July 8, 2019, seeking to change her filing status from joint to married filing separately. On April 9, 2020, Ms. Salvi filed Form 8379, Injured Spouse Allocation, for taxable year 2017.

B. *Taxable Year 2018*

Ms. Salvi and Mr. Vanover did not file a joint request for an extension of time to file their return for taxable year 2018, nor did they timely file a joint Form 1040 for the taxable year. In or around July 2019 Mr. DiPietro prepared a joint Form 1040 for Ms. Salvi and Mr. Vanover for taxable year 2018, showing an adjusted gross income totaling $112,307, total tax liability of $11,140, and an amount due of $63. Ms. Salvi and Mr. Vanover signed Form 8879, IRS e-file Signature Authorization, which authorized Mr. DiPietro to file the return showing an amount due of $63. However, this return failed to reflect some of Mr. Vanover's income reported on Form W–2, Wage and Tax Statement, for taxable year 2018. Therefore, it was not filed with the IRS.

Mr. DiPietro prepared a revised joint return for taxable year 2018 that included all of Mr. Vanover's Form W–2 income for taxable year 2018. On July 16, 2019, Mr. DiPietro submitted an original Form 1040 on behalf of Ms. Salvi and Mr. Vanover for taxable year 2018, which was processed by the IRS on August 19, 2019.[8] The Form 1040 filed with the IRS for taxable year 2018 shows a total tax due of $21,551. Ms. Salvi and Mr. Vanover did not pay the amount shown as due on the return.

The IRS issued Ms. Salvi and Mr. Vanover a Notice of Deficiency, dated April 5, 2021, determining a deficiency of $2,233 and a section 6651(a)(1) failure to file addition to tax of $446. Therein, the IRS determined that Ms. Salvi and Mr. Vanover failed to report nonemployee compensation of $850 received from A-Tek Computer Services, Inc. (A-Tek); taxable dividend income of $1,001 received from Fundamental Investors—An American Funds Service Company (Fundamental Investors); and capital gains of $4,823 received from Fundamental Investors. Respondent also determined an additional tax of $396 on an early distribution from a qualified plan pursuant to section 72(t). Ms. Salvi and Mr. Vanover did not file a petition with this Court seeking review of the Notice of Deficiency issued by the IRS.

The parties have stipulated that during taxable year 2018 Ms. Salvi had income of $94,831, comprising wages of $70,715, dividends of

---

[8] Ms. Salvi and Mr. Vanover did not file a request for an extension of time to file their return for taxable year 2018.

[*7] $1,001, capital gains of $4,823, and a taxable retirement account distribution of $18,292. The parties have also stipulated that Mr. Vanover had income of $74,217, comprising wages of $69,410, self-employment income of $850, and a taxable retirement account distribution of $3,957. Mr. Vanover's $3,957 taxable retirement account distribution was reported on both the initial return prepared by Mr. DiPietro for taxable year 2018 and the return that was actually filed with the IRS for taxable year 2018.

On April 8, 2020, Ms. Salvi filed Form 1040–X for taxable year 2018, seeking to change her filing status from joint to married filing separately for the August 19, 2019, return. On April 9, 2020, Ms. Salvi filed Form 8379 for taxable year 2018.

III.    *Marital Issues and Divorce*

Ms. Salvi and Mr. Vanover had a number of problems that led to the deterioration of their marriage. One arose in February 2020 when Ms. Salvi and Mr. Vanover were involved in a physical altercation, the impetus for which occurred months before. Around November 2019, after growing discontent with Mr. Vanover's financial management, Ms. Salvi told Mr. Vanover that he had three months to leave her home. Three months later, on the day of the physical altercation, Ms. Salvi and Mr. Vanover were arguing about bills. Mr. Vanover attempted to leave the residence to stay at a hotel for the night, but Ms. Salvi prevented him from doing so. The verbal argument became physical when Ms. Salvi attacked Mr. Vanover, attempting to take his cell phone, and while doing so, she raked her nails down his arms leaving marks, bit him, and punched his ribs. Mr. Vanover pushed Ms. Salvi and she fell to the ground, sustaining bruises on her thigh.

After their physical altercation, Mr. Vanover left the Newbury residence and called 911. The police arrived and, after an investigation, arrested Ms. Salvi. Ms. Salvi was tried and found guilty of domestic violence and disorderly conduct. After her sentencing, Ms. Salvi appealed her conviction to the Court of Appeals of Ohio for the Eleventh Appellate District, Geauga County. On September 13, 2021, the Court of Appeals of Ohio affirmed the judgment of the trial court.[9] Ms. Salvi

---

[9] At trial of this case Ms. Salvi stated that she was pursuing various options to continue litigating the verdict of the Chardon Municipal Court that was affirmed in the opinion of the Court of Appeals of Ohio, and that she secured representation from a domestic violence advocacy group to assist her. This Court admitted the opinion of

**[\*8]** appealed to the Supreme Court of Ohio, but that court declined jurisdiction over the appeal.

Following the altercation, Mr. Vanover moved out of Ms. Salvi's home. Or, as Ms. Salvi characterizes it, she "booted" Mr. Vanover out. On June 20, 2020, Mr. Vanover filed a petition for divorce with the Domestic Relations Division of the Court of Common Pleas, Cuyahoga County, Ohio. Ms. Salvi and Mr. Vanover were declared divorced on January 20, 2023. Pursuant to the divorce decree, Ms. Salvi retained sole ownership of her residence. Further, the parties were ordered to evenly divide the balances owed to the IRS for marital tax years 2015 through 2019, subject to modification by a ruling or order of this Court and the IRS.

IV.   *Ms. Salvi's Request for Relief Under Section 6015 and Other Filings*

On March 31, 2021, Ms. Salvi filed Form 8857, Request for Innocent Spouse Relief. Therein, Ms. Salvi requested relief for taxable years 2015, 2016, 2017, and 2018.

On Form 8857, Ms. Salvi stated that she was unaware of Mr. Vanover's previous tax debts to the IRS, and that he "withheld his W[–]2s for years which delayed our filing." Ms. Salvi claimed that she was not involved in preparing the returns, that she "did not know anything was incorrect or missing," and that she did not know all the sources of income or earnings. However, Ms. Salvi also claimed that the returns were prepared by a third party only "after [Mr. Vanover] finally gave [her] his W[–]2s after filing extension and begging for the information."

On her Form 8857, Ms. Salvi stated that she began to suspect that Mr. Vanover had financial problems in 2017. Ms. Salvi stated that she and Mr. Vanover went to an attorney (i.e., Ms. Szczepanik) to explain the past due amount and arrange for a payment plan with the IRS.[10] It was at that point that Ms. Szczepanik discovered that Mr. Vanover "ha[d] a lot of past due taxes," although despite Ms. Salvi's inquiries, neither Ms. Szczepanik nor Mr. Vanover disclosed the exact amount of

the Court of Appeals of Ohio into evidence with this understanding and directed Ms. Salvi to notify the Court of any subsequent filings relating to the matter in her briefing. The Court notes that Ms. Salvi did not notify the Court of any subsequent developments related to further appeal of her criminal conviction.

[10] An installment agreement was entered for taxable year 2015.

[*9] past due taxes to Ms. Salvi. On the basis of Ms. Salvi's own written statements from her Form 8857, we find as fact that Ms. Salvi knew or had reason to know of Mr. Vanover's tax problems as early as 2017, although she may not have known the precise amount due until a later date.

Further, on Form 8857 Ms. Salvi claimed that Mr. Vanover "never showed [her] his pay or account" and that he "gave [her] what he deemed was appropriate" and that she "always had to beg for bill money." Ms. Salvi indicated that she had equity in assets, including her home, car, and retirement account, of approximately $168,200, total monthly income of $1,950, and monthly expenses of $4,100. Ms. Salvi also stated that at the time she submitted her request for relief she was making withdrawals from her retirement account to pay her monthly expenses. According to Ms. Salvi, she had been able to find only part-time work after she lost her previous full-time job on account of the COVID-19 pandemic.

Additionally, Ms. Salvi claimed that she was a victim of spousal abuse or domestic violence either during the taxable years for which she seeks relief or at the time when the returns were filed for those taxable years. Ms. Salvi claims that Mr. Vanover sexually abused her, knocked her into a wall and caused her injuries, verbally abused her, financially abused her, and blamed her for causing him to have an affair. Ms. Salvi also said that Mr. Vanover abused alcohol, caused her to fear for her safety, and made most or all decisions for her, including financial decisions. She further claims that Mr. Vanover lied to the sheriff about abusing her and blamed her for everything.

On May 24, 2021, the IRS issued Ms. Salvi Letter 3659–C, Requesting Spouse Initial Contact Letter. That same day, the IRS issued Mr. Vanover Letter 3284–C, Non-Requesting Spouse Initial Contact Letter. The IRS did not receive a response from Mr. Vanover, and he did not participate during the administrative proceedings. On October 26, 2021, the IRS assigned Ms. Salvi's request to Tax Examiner Peal (TE Peal) to examine the request and make a recommendation.

On November 2, 2021, the IRS issued a preliminary determination denying relief for the taxable years at issue. In the determination, TE Peal explained that for taxable year 2017 the couple had filed a valid joint return and that the unpaid tax was attributable to Ms. Salvi's pension withdrawal. Because the liability was due to an underpayment, relief was not available under section 6015(b) or (c), and

[*10] relief was not available under section 6015(f) because the liability was attributable to her.

For taxable year 2018, TE Peal concluded that the couple filed a valid joint return. With respect to the underpayment of tax, TE Peal explained that Ms. Salvi was ineligible for relief under section 6015(b) or (c) because she had actual knowledge of the understatement. Further, with respect to the understatement and underpayment of tax for taxable year 2018, TE Peal concluded that Ms. Salvi was ineligible for relief under section 6015(f) because she had knowledge of the understatement and was not in compliance with her filing obligation, with most other factors being neutral. The preliminary determination also gave Ms. Salvi 30 days from the date of the preliminary determination to appeal the decision to the IRS Independent Office of Appeals.

In response Ms. Salvi submitted Form 12509, Statement of Disagreement, dated December 11, 2021. In her statement, she asserted that taxes and penalties were incurred because Mr. Vanover did not provide her with the necessary documents to file on time. Further, she stated that she would not have married Mr. Vanover had she known about his financial situation and that Mr. Vanover physically and financially abused her. Additionally, Ms. Salvi stated that she had lost her job and was suffering financially because of the effects of COVID-19. Ms. Salvi's Statement of Disagreement was submitted more than 30 days after the date of the preliminary determination. Accordingly, on January 25, 2022, the IRS issued two separate Final Determinations denying relief under section 6015 for taxable years 2017 and 2018.

V.    *Ms. Salvi's Tax Compliance*

Since her separation from Mr. Vanover, Ms. Salvi has had varying degrees of tax compliance. The record contains no evidence regarding Ms. Salvi's tax compliance for taxable year 2019 or 2020. With respect to taxable year 2021, Ms. Salvi states that she "worked a small job during 2021, so I don't even believe I made enough to file, based on all my deductions." Ms. Salvi could not remember whether she filed her tax return for taxable year 2021. With respect to taxable year 2022, Ms. Salvi stated that she earned income and that she filed for an extension, but as of the time of trial on April 15, 2024, she had not yet filed her return for taxable year 2022 because she "keep[s] renewing" her extension. The record does not contain any evidence regarding Ms. Salvi's tax compliance for taxable year 2023.

**[\*11]**                                         OPINION

## I.    *Jurisdiction*

The Tax Court is a court of limited jurisdiction and can exercise its jurisdiction only to the extent provided by Congress. § 7442; *Judge v. Commissioner*, 88 T.C. 1175, 1180–81 (1987); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985); *see also* Rules 13(a) and (b), 320(b). Pursuant to section 6015(e), as applicable in this case, this Court has jurisdiction to review a stand-alone petition when the taxpayer files a petition no later than the close of the 90th day after the Commissioner has issued a final determination denying the requesting spouse's claim for relief. *See* § 6015(e)(1)(A)(i)(I), (ii).

Ms. Salvi timely filed a stand-alone Petition with this Court on May 6, 2022. Accordingly, this Court has jurisdiction under section 6015(e) to review the final determination denying Ms. Salvi's request for relief for the taxable years at issue. Additionally, pursuant to section 6015(e)(4) and Rule 325, on October 17, 2022, Mr. Vanover filed a Notice of Intervention and became a party to this case, opposing relief.

## II.    *Scope and Standard of Review*

We apply a de novo standard of review to any determination made by the Commissioner under section 6015. § 6015(e)(7); *see Porter v. Commissioner*, 132 T.C. 203, 210 (2009), *superseded in part by statute*, Taxpayer First Act, Pub. L. No. 116-25, § 1203, 133 Stat. 981, 988 (2019). Our scope of review is limited to the administrative record established at the time of the Commissioner's determination and any newly discovered or previously unavailable evidence. § 6015(e)(7). The Court will consider Ms. Salvi's and Mr. Vanover's testimony because it was "unavailable evidence" at the time of the administrative proceeding. *See Thomas v. Commissioner*, 162 T.C. 9, 20 (2024) (first citing *Freman*, T.C. Memo. 2023-10, at \*10; and then citing *Sleeth v. Commissioner*, T.C. Memo. 2019-138, at \*3, *aff'd*, 991 F.3d 1201 (11th Cir. 2021)). Ms. Salvi, as the requesting spouse, generally bears the burden of proving that she is entitled to relief. *See* Rule 142(a); *Porter*, 132 T.C. at 210

## III.    *Witness Credibility*

In deciding whether a taxpayer has carried her burden of proof, witness credibility is an important consideration. *Ishizaki v. Commissioner*, T.C. Memo. 2001-318, 2001 WL 1658189, at \*7. "[T]he distillation of truth from falsehood . . . is the daily grist of judicial life."

[*12] *Diaz v. Commissioner*, 58 T.C. 560, 564 (1972). "As a trier of fact, it is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we believe." *Kropp v. Commissioner*, T.C. Memo. 2000-148, 2000 WL 472840, at *3.

We found some of Ms. Salvi's testimony credible, but we found other parts of her testimony contradictory, self-serving, and lacking credibility. Specifically, Ms. Salvi's testimony that she did not know of Mr. Vanover's tax problems until 2019 conflicted with her own sworn statements on her Form 8857 that she knew, and certainly had reason to know, that Mr. Vanover had tax problems as early as 2017, although she may not have known the precise amounts thereof until a later date. Further, we found Ms. Salvi was not credible when discussing the circumstances surrounding the filing of the 2018 joint return.

We found Mr. Vanover's testimony to be credible. With respect to his testimony about the February 2020 altercation with Ms. Salvi, we thought Mr. Vanover was truthful and sincere. With respect to financial matters, we thought his testimony was an honest recounting of the occurrences during the taxable years at issue, which was also supported by the record.

IV.    *Section 6015, Relief from Joint and Several Liability*

Married taxpayers may elect to file a joint federal income tax return. § 6013(a). If a joint return is made, (1) the tax is computed on the spouses' aggregate income; (2) each spouse is fully responsible for the accuracy of the return; and (3) each spouse is jointly and severally liable for the entire amount of tax shown on the return or found to be owing. § 6013(d)(3); *Butler v. Commissioner*, 114 T.C. 276, 282 (2000). Nevertheless, section 6015 provides three potential avenues and procedures for relief from joint and several liability: (1) full or partial relief for an understatement of tax under section 6015(b), (2) proportionate relief for an understatement of tax under section 6015(c), and (3) full or partial relief for an understatement or underpayment of tax under section 6015(f).

Ms. Salvi seeks relief from joint and several liability under section 6015(f) for the underpayments for taxable years 2017 and 2018, and under sections 6015(b), (c), and (f) for the understatements for taxable year 2018.

**[\*13]** A.    *Joint Return Requirement*

The availability of each type of relief under section 6015 depends upon the filing of a joint return. *See* § 6015(a)(1), (b)(1)(A), (c)(1); Treas. Reg. §§ 1.6015-2(a)(1), 1.6015-3(a), 1.6015-4(a), (c); *see also* Rev. Proc. 2013-34, § 4.01, 2013-43 I.R.B. 397, 399. Whether a joint return was filed is a question of fact, the resolution of which depends, inter alia, on the intent of the parties. *Okorogu v. Commissioner*, T.C. Memo. 2017-53, at \*19 (citing *Heim v. Commissioner*, 27 T.C. 270, 273–74 (1956), *aff'd*, 251 F.2d 44 (8th Cir. 1958)). To file jointly, both spouses must intend to make a joint return. *See Lane v. Commissioner*, 26 T.C. 405, 408–09 (1956).

In evaluating intent, the Court has considered whether the nonsigning spouse filed a separate return, whether the nonsigning spouse objected to the filing of a joint return, and whether prior filing history indicates an intent to file jointly. *See, e.g.*, *Estate of Campbell v. Commissioner*, 56 T.C. 1, 12–13 (1971); *Heim*, 27 T.C. at 274; *Howell v. Commissioner*, 10 T.C. 859, 866 (1948), *aff'd per curiam*, 175 F.2d 240 (6th Cir. 1949). If intent to file a joint return otherwise exists, it is not fatal that one spouse did not sign the return. *Harrington v. Commissioner*, T.C. Memo. 2012-285, at \*8 (citing *Hennen v. Commissioner*, 35 T.C. 747, 748 (1961)). If neither spouse signs the purported return, there is no joint return. *See Arnold v. Commissioner*, T.C. Memo. 2003-259, 2003 WL 22053838, at \*2.

Ms. Salvi does not dispute that she filed a joint return for taxable year 2017, but she alleges that she did not sign the purported joint return filed for taxable year 2018 nor a Form 8879. But even if Ms. Salvi did not sign the return for taxable year 2018, that does not necessarily mean that the return for taxable year 2018 was not a joint return. *See Harris v. Commissioner*, T.C. Memo. 1961-324.

However, we need not resolve this question because we find the parties' stipulations foreclose Ms. Salvi's argument, and on that basis we conclude that Ms. Salvi and Mr. Vanover filed a joint return for taxable year 2018. There are two stipulations relevant to this analysis. First, the parties have stipulated that "[f]or tax[able] year[] . . . 2018, petitioner and intervenor elected to file a joint personal income tax return as a married couple." Second, the parties have also stipulated that "[o]n August 19, 2019, an original Form 1040 for tax year 2018 was e-filed on behalf of Petitioner and Intervenor, showing total tax due of $21,551."

**[\*14]** Rule 91(e) provides that "[a] stipulation will be treated, to the extent of its terms, as a *conclusive admission* by the parties to the stipulation, unless otherwise permitted by the Court or as agreed by those parties." (Emphasis added.) Rule 91(e) continues, providing that "[t]he Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so if justice requires."

Stipulations, like contracts, bind the parties to their terms. *See McGivney v. Commissioner*, T.C. Memo. 2000-224, 2000 WL 1036364, at \*1 (citing *Stamos v. Commissioner*, 87 T.C. 1451, 1455 (1986)). The U.S. Court of Appeals for the Sixth Circuit, to which this case is presumptively appealable, *see* § 7482(b)(1)(F), has held that stipulations will be treated as binding and conclusive, absent exceptional circumstances, *see Estate of Quirk v. Commissioner*, 928 F.2d 751, 758–59 (6th Cir. 1991), *aff'g in part, remanding in part* T.C. Memo. 1988-286; *see also, e.g.*, *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 121 (1st Cir. 2003).

As applicable to this case, we find that the above-referenced stipulations resolve the issue that Ms. Salvi now seeks to dispute. The parties stipulated that a Form 1040 for taxable year 2018 was filed on behalf of Ms. Salvi and Mr. Vanover. The record reflects that the return for taxable year 2018 was filed on behalf of Ms. Salvi and Mr. Vanover by a paid return preparer, Mr. DiPietro (who was also Ms. Savi's cousin).

Further, the parties have also stipulated that for taxable year 2018 Ms. Salvi and Mr. Vanover elected to file a joint personal income tax return. Pursuant to section 6013(a), a married couple may elect to file a joint return. *See Camara v. Commissioner*, 149 T.C. 317, 320 (2017) (referring to the section 6013(a) election to make a joint return in the first instance); Treas. Reg. § 1.6013-1(a)(1); *see also* § 7701(a)(38) ("The term 'joint return' means a single return made jointly under section 6013 by a husband and wife.").

A married couple makes the election to file a joint return by actually filing their joint return, *see* § 6013; *see also, e.g.*, *Casey v. Commissioner*, T.C. Memo. 1988-170, 1988 Tax Ct. Memo LEXIS 198, at \*7 (citing *Thompson v. Commissioner*, 78 T.C. 558, 561 (1982)), *aff'd*, 876 F.2d 899 (11th Cir. 1989) (unpublished table decision), and to make such a valid election contemplates that, inter alia, the married couple had the requisite intent to make a joint return, *see Okorogu*, T.C. Memo. 2017-53, at \*19 (citing *Heim*, 27 T.C. at 273–74), and that at least one

**[\*15]** spouse signed the return, *Harrington,* T.C. Memo. 2012-285, at \*8 (citing *Hennen,* 35 T.C. at 748). The terms of the parties' stipulations are clear and foreclose Ms. Salvi's contention that she did not sign the return for taxable year 2018.[11] Accordingly, we will give effect to the terms of the stipulations, which we treat as conclusive admissions. *See* Rule 91(e); *see also Franc v. Commissioner,* T.C. Memo. 2010-79, 2010 WL 1558333, at \*1.

In any event, the evidence and the testimony in the record support the conclusion that Ms. Salvi and Mr. Vanover filed a joint return for taxable year 2018. The Court considers various factors when considering whether a nonsigning spouse intended to file a joint return. *See, e.g.*, *Estate of Campbell*, 56 T.C. at 12–13; *Heim*, 27 T.C. at 274; *Howell*, 10 T.C. at 866. The facts here militate in favor of the conclusion that Ms. Salvi intended to file a joint return with Mr. Vanover for taxable year 2018. When the return was filed for taxable year 2018, Ms. Salvi and Mr. Vanover were in the process of filing their delinquent returns. Ms. Salvi and Mr. Vanover filed their delinquent returns for taxable years 2016 and 2017 on July 8, 2019, and in short succession, on July 16, 2019, submitted their delinquent Form 1040 to the IRS for taxable year 2018.[12] These facts, when combined with the fact that Ms. Salvi and Mr. Vanover previously filed the 2015 joint return, demonstrate that Ms. Salvi had a history of filing joint returns with Mr. Vanover. *See Heim*, 27 T.C. at 274.

Further, at the time the joint return was filed, Ms. Salvi did not file her own return for taxable year 2018. *See Howell*, 10 T.C. at 866. Rather, it was only after the physical altercation occurred between Ms. Salvi and Mr. Vanover—and Mr. Vanover vacated the marital residence—that Ms. Salvi filed Forms 1040–X and Forms 8379[13] for

---

[11] The parties stipulated the inclusion of an affidavit executed by Mr. DiPietro concerning taxable year 2018, marked as Exhibit 25-J. Mr. DiPietro did not testify at the trial in this case, and the affidavit seeks to speak to the circumstances of filing for taxable year 2018. Although the affidavit is included in the record, we accord it no weight.

[12] On July 16, 2019, Mr. DiPietro submitted an original Form 1040 on behalf of Ms. Salvi and Mr. Vanover for taxable year 2018, which was processed by the IRS on August 19, 2019. The parties have stipulated that the return for taxable year 2018 was filed on August 19, 2019.

[13] Injured spouse relief is different from innocent spouse relief pursuant to section 6015. Injured spouse relief "involves obtaining a refund of a spouse's interest in an overpayment that has been offset pursuant to § 6402." Lawrence A. Sannicandro, *Innocent Spouse Relief,* 645-3rd Tax Mgmt. (BNA), at XI (comparing innocent spouse and injured spouse relief).

**[\*16]** taxable years 2016 through 2018. Again, this fact supports the conclusion that Ms. Salvi intended to file a joint return with Mr. Vanover for taxable year 2018.

Finally, Mr. DiPietro was Ms. Salvi's tax preparer for decades before the filing of the return for taxable year 2018. It strains credulity to suggest that Mr. DiPietro—who is Ms. Salvi's cousin and long-time preparer—conspired with Mr. Vanover, who did not take an active role in managing the couple's finances, to file a joint return about which she had no knowledge. We found Ms. Salvi's testimony on this point wanting for credibility.

Accordingly, on the basis of the stipulations, and as further supported by the evidence in the record, we find that the joint return requirement is satisfied for the taxable years at issue. *See* § 6015(a)(1), (b)(1)(A), (c)(1); Rev. Proc. 2013-34, § 4.01.

B.      *Section 6015(b) Relief*

1.      *Section 6015(b) Generally*

Ms. Salvi seeks relief under section 6015(b) for the understatement of tax for taxable year 2018. To qualify for relief under section 6015(b), the requesting spouse must satisfy all of the following conditions: (1) a joint return was filed for the taxable year; (2) there was an understatement of tax attributable to erroneous items of the nonrequesting spouse on the joint return; (3) the requesting spouse did not know and had no reason to know of the understatement at the time that the return was signed; (4) taking into account all of the facts and circumstances, it is inequitable to hold the requesting spouse liable for the deficiency in tax attributable to such understatement; and (5) the requesting spouse made a timely election for relief under section 6015(b). *See* § 6015(b)(1). These conditions are stated in the conjunctive, and thus a failure to meet any one of them precludes relief under section 6015(b). *Alt v. Commissioner*, 119 T.C. 306, 313 (2002), *aff'd*, 101 F. App'x 34 (6th Cir. 2004); *Haltom v. Commissioner*, T.C. Memo. 2005-209, 2005 WL 2132599, at \*4. Ms. Salvi bears the burden of proving her entitlement to relief under section 6015(b). *See Alt*, 119 T.C. at 311.

As discussed *supra* Part IV.A, we find that the joint return requirement is satisfied. Further, Ms. Salvi filed her request for relief in a timely manner. *See* § 6015(b)(1)(E). These requirements cannot reasonably be disputed.

**[\*17]**     2.     *Section 6015(b)(1)(B)—Understatement of Tax Attributable to Nonrequesting Spouse*

Section 6015(b)(1)(B) provides that a requesting spouse can be relieved of joint and several liability if the requesting spouse shows that there was an understatement of tax attributable to erroneous items of the nonrequesting spouse.

First, as a starting point, there was an understatement of tax on Ms. Salvi and Mr. Vanover's return for taxable year 2018. Accordingly, the IRS issued Ms. Salvi and Mr. Vanover a Notice of Deficiency, dated April 5, 2021, determining a deficiency of $2,233 and a section 6651(a)(1) failure to file addition to tax of $446. The Notice of Deficiency addressed the following items: (1) unreported taxable dividends of $1,001 received from Fundamental Investors; (2) unreported capital gains of $4,823 received from Fundamental Investors; and (3) unreported nonemployee compensation of $850 received from A-Tek. Further, respondent also determined, inter alia, an additional tax of $396 on an early distribution from a qualified retirement plan pursuant to section 72(t).

The parties have stipulated that Mr. Vanover had $850 of self-employment income for taxable year 2018 and that he had a taxable retirement account distribution of $3,957 for taxable year 2018. Therefore, we find that this self-employment income and the 10% section 72(t) tax (additional tax of $396) are attributable to Mr. Vanover. The parties have also stipulated that Ms. Salvi's income included the $1,001 of dividends and the $4,823 capital gain. Therefore, we find that these amounts are properly attributable to Ms. Salvi. Accordingly, we find that Ms. Salvi is not eligible for relief from the items that are attributable to her. *See, e.g.*, *Wright v. Commissioner*, T.C. Memo. 2023-153, at \*7; *see also Bartak v. Commissioner*, T.C. Memo. 2004-83, 2004 WL 565455, at \*9–10, *aff'd*, 158 F. App'x 43 (9th Cir. 2005); *Ellison v. Commissioner*, T.C. Memo. 2004-57, 2004 WL 793183, at \*8–9. Thus, we will consider whether Ms. Salvi is eligible for relief from those items attributable only to Mr. Vanover.

3.     *Section 6015(b)(1)(C)—Knowledge or Reason to Know*

We now turn to section 6015(b)(1)(C), which requires a requesting spouse to establish that she did not know or have reason to know of the understatement of tax attributable to erroneous items of the nonrequesting spouse. A requesting spouse has knowledge or reason to

[*18] know of an understatement of tax if he or she actually knew of the understatement or if a reasonable person in similar circumstances would have known of the understatement. *Jacobsen v. Commissioner*, T.C. Memo. 2018-115, at *11, *14 (citing Treas. Reg. § 1.6015-2(c)), *aff'd*, 950 F.3d 414 (7th Cir. 2020); *see also Pietromonaco v. Commissioner*, 3 F.3d 1342, 1345 (9th Cir. 1993), *rev'g* T.C. Memo. 1991-361.

Respondent asserts that Ms. Salvi had reason to know of the erroneous items attributable to Mr. Vanover. First, respondent argues that Ms. Salvi had reason to know of Mr. Vanover's unreported nonemployee compensation because she was aware that Mr. Vanover was employed and earned income during taxable year 2018. Second, respondent argues Ms. Salvi had reason to know of the part of the understatement attributable to the failure to report the early withdrawal additional tax under section 72(t) because Mr. Vanover's retirement account distribution for taxable year 2018 was reported on the return.

We agree with respondent that Ms. Salvi had "reason to know" of the understatement of tax attributable to Mr. Vanover. A requesting spouse has reason to know of an understatement if a reasonably prudent person could be expected to know of the understatement. *See* Treas. Reg. § 1.6015-2(c); *see also Crouse v. Commissioner*, T.C. Memo. 2011-97, 2011 WL 164172, at *16 (citing *Alt v. Commissioner*, 101 F. App'x at 41). This standard is not abstract, however, as the prudent taxpayer must be placed in Ms. Salvi's particular circumstances. *See Resser v. Commissioner*, 74 F.3d 1528, 1536 (7th Cir. 1996), *rev'g and remanding* T.C. Memo. 1994-241.

Further, a taxpayer who signs a return is generally charged with constructive knowledge of its contents. *See Hayman v. Commissioner*, 992 F.2d 1256, 1262 (2d Cir. 1993), *aff'g* T.C. Memo. 1992-228. But, even if a requesting spouse is not aware of sufficient facts to give her reason to know of the understatement, she may nevertheless know enough facts to impose a "duty of inquiry" that may put the requesting spouse on notice that an understatement of tax exists. *Price v. Commissioner*, 887 F.2d 959, 963 n.9, 965 (9th Cir. 1989), *rev'g* T.C. Memo 1987-360. A requesting spouse seeking to establish that she had no reason to know of an understatement must show that she was unaware of the circumstances that gave rise to the error and not merely unaware of the tax consequences. *See Richardson v. Commissioner*, 509 F.3d 736, 745–46 (6th Cir. 2007), *aff'g* T.C. Memo. 2006-69; *Purcell v. Commissioner*, 826 F.2d 470, 473–74 (6th Cir. 1987), *aff'g* 86 T.C. 228

[*19] (1986). When a duty to inquire exists and a requesting spouse fails to fulfill that obligation, the requesting spouse is deemed to have constructive knowledge. *See Di Giorgio v. Commissioner*, T.C. Memo. 2023-44, at *31.

In considering whether a requesting spouse had reason to know of an understatement, we consider various factors, including the requesting spouse's level of education, involvement in the family finances, the presence of lavish or unusual expenditures, and the nonrequesting spouse's evasiveness or deceit about the family's finances. *Price v. Commissioner*, 887 F.2d at 965 (citing *Stevens v. Commissioner*, 872 F.2d 1499, 1505 (11th Cir. 1989), *aff'g* T.C. Memo. 1988-63). Applying the foregoing, we find that Ms. Salvi had reason to know of the erroneous items attributable to Mr. Vanover for taxable year 2018.

As an initial matter, respondent argues that Ms. Salvi had reason to know of Mr. Vanover's nonemployee compensation because she was aware that Mr. Vanover was employed during taxable year 2018. While the record supports respondent's argument that Ms. Salvi knew of Mr. Vanover's Form W–2 employment, the record is silent as to Ms. Salvi's specific level of knowledge about Mr. Vanover's work as an independent contractor. Nevertheless, the surrounding facts and circumstances support a conclusion that Ms. Salvi had, at a minimum, a duty to investigate the veracity of the information presented on the return, a duty she did not fulfill.

Ms. Salvi had known, at least since taxable year 2017, that Mr. Vanover had money troubles, including the fact that he received a lot of debt collection phone calls. Further, while working with Ms. Szczepanik, Ms. Salvi "began to suspect" that there were problems when it was discovered that Mr. Vanover had lots of past due taxes. Given Ms. Salvi's suspicions about Mr. Vanover's tax delinquency, the facts support a conclusion that Ms. Salvi had a heightened duty to inquire given that Mr. Vanover struggled with financial management. *See, e.g., Cotroneo v. Commissioner*, T.C. Memo. 2024-70, at *17. Such a duty is even clearer given that Mr. Vanover reported similar items of income on the return filed for taxable year 2017. Ms. Salvi is highly educated, having earned both a bachelor's and a master's degree. Further, Ms. Salvi took a lead role in managing the finances and facilitating the couple's tax filings through her longtime CPA, her cousin. These facts strongly support the conclusion that Ms. Salvi had reason to know, and that she certainly had a duty of inquiry to investigate, the accuracy of the return

**[\*20]** for taxable year 2018. A reasonably prudent person in Ms. Salvi's circumstances would inquire about the sufficiency and completeness of the information in the return, rather than briefly looking at the amounts on the return and then signing it, as occurred here. *See Alt v. Commissioner*, 101 F. App'x at 41. Ms. Salvi did not satisfy her duty of inquiry.

Furthermore, with respect to the part of the understatement arising from the failure to report the section 72(t) additional tax on Mr. Vanover's taxable retirement account distribution, we also find that Ms. Salvi had reason to know of this amount. Once again, a requesting spouse has "reason to know" of the understatement of tax if she knew every fact necessary to determine the legal consequences of the income or if such facts are reasonably within her reach. *See Richardson v. Commissioner*, 509 F.3d at 745–46; *Purcell v. Commissioner*, 826 F.2d at 473–74. Both the initial return prepared by Mr. DiPietro for taxable year 2018 and the return that was actually filed with the IRS for taxable year 2018 included Mr. Vanover's retirement account distribution of $3,957. The inclusion of Mr. Vanover's taxable retirement account distribution on the return for taxable year 2018 means that Ms. Salvi had reason to know of the unreported section 72(t) additional tax. *See, e.g., Porter*, 132 T.C. at 212. Accordingly, because Ms. Salvi had constructive knowledge of the erroneous items attributable to Mr. Vanover, she is not eligible for relief under section 6015(b).

Because the requirements of section 6015(b) are conjunctive, we decline to address section 6015(b)(1)(D), and we determine that Ms. Salvi is not entitled to relief under this subsection. *See Alt*, 119 T.C. at 313.

C.      *Section 6015(c) Relief*

Next, Ms. Salvi seeks relief under section 6015(c) for the understatement of tax for taxable year 2018. Section 6015(c) allows a requesting spouse to elect to be liable only for the portion of the deficiency on the joint return that is properly allocable to him or her as provided by section 6015(d). *See Cotroneo*, T.C. Memo. 2024-70, at \*18.

To qualify for relief under section 6015(c), the requesting spouse must satisfy all of the following conditions: (1) a joint return was filed for the taxable year; (2) at the time of the election, the requesting spouse was separated or divorced from the nonrequesting spouse or was not a member of the same household as the nonrequesting spouse at any time

**[\*21]** during the 12-month period ending on the date of the request for relief; and (3) the requesting spouse made a timely election for relief. § 6015(c)(1), (3). However, if the Commissioner demonstrates that, at the time of signing the return, a requesting spouse had actual knowledge of the item giving rise to the deficiency (or a portion thereof), the requesting spouse shall be ineligible for relief under this section for the deficiency (or portion thereof). § 6015(c)(2), (3)(C).

First, as discussed *supra* Part IV.A, we find that the joint return requirement is satisfied. Second, we also find that Ms. Salvi satisfies the separated, divorced, or living apart requirement set forth in section 6015(c)(3)(A)(i). Ms. Salvi and Mr. Vanover resided at the same residence until approximately February 2020, shortly after the physical altercation occurred. Ms. Salvi filed her request for innocent spouse relief on March 31, 2021, approximately 13 months after she and Mr. Vanover ceased living together. Accordingly, Ms. Salvi satisfies the separated, divorced, or living apart requirement.

However, we find that Ms. Salvi is entitled to relief only to the extent conceded by respondent. As discussed *supra* Part IV.B.2, the IRS determined a deficiency for taxable year 2018, some items of which are allocable to Ms. Salvi. In the Notice of Deficiency respondent determined unreported income of $850 from A-Tek, which the parties have stipulated is part of Mr. Vanover's income, and $1,001 of unreported taxable dividends and a $4,823 capital gain from Fundamental Investors, which the parties have stipulated are part of Ms. Salvi's income. Additionally, respondent determined that Ms. Salvi and Mr. Vanover were liable for the 10% additional tax of $396 on an early retirement account withdrawal pursuant to section 72(t), and the parties have stipulated that the underlying retirement account withdrawal is part of Mr. Vanover's income. Ms. Salvi is not eligible for relief from the items that are allocable to her. *See, e.g.*, *Wright*, T.C. Memo. 2023-153, at \*6 (citing *Francel v. Commissioner*, T.C. Memo. 2019-35, at \*45–46). Accordingly, we will consider her eligibility for relief from those items allocable only to Mr. Vanover.

As to the items allocable to Mr. Vanover, the benefit of section 6015(c) is not available to an individual with actual knowledge of "any item giving rise to a deficiency." *See* § 6015(c)(3)(C). To preclude relief under section 6015(c), the Commissioner must prove by a preponderance of the evidence that the requesting spouse had actual knowledge of any item giving rise to a deficiency. *Culver v. Commissioner*, 116 T.C. 189,

**[\*22]** 196 (2001); *see also Cheshire v. Commissioner*, 282 F.3d 326, 335 (5th Cir. 2002), *aff'g* 115 T.C. 183 (2000).

Respondent agrees that Ms. Salvi is eligible for relief for the items giving rise to the deficiency that are allocable to Mr. Vanover. Specifically, respondent states that there is no evidence that Ms. Salvi had actual knowledge of the $850 Mr. Vanover earned from A-Tek or the retirement account distribution, which required inclusion of the 10% additional tax of $396 pursuant to section 72(t). In such situations where the requesting spouse and the Commissioner agree to relief (or partial relief), but the intervening spouse objects to relief, as is the case here, whether the taxpayer had actual knowledge should be "established by a preponderance of the evidence as presented by all three parties." *See Young v. Commissioner*, T.C. Memo. 2012-255, at \*10 (first citing *Pounds v. Commissioner*, T.C. Memo. 2011-202; and then citing *Stergios v. Commissioner*, T.C. Memo. 2009-15).

On the basis of the evidence presented by the parties, we agree with Ms. Salvi and respondent that Ms. Salvi is eligible for relief from the portion of the deficiency due to items allocable to Mr. Vanover.[14] Ms. Salvi did not have actual knowledge of the items allocable to Mr. Vanover. The parties' stipulation that Ms. Salvi's and Mr. Vanover's incomes were deposited in their respective separate bank accounts is also supported by the broader record. We do not find any evidence in the record to support the conclusion that Ms. Salvi had actual knowledge (in whole or in part) of the specific amounts allocable to Mr. Vanover, despite the fact that she may have had reason to know. *See* Treas. Reg. § 1.6015-3(c)(4) (example 2) (providing that a requesting spouse is eligible for relief when the nonrequesting spouse deposited funds into a separate bank account, despite the fact that the requesting spouse generally knew about the circumstances the funds were derived from because, for purposes of section 6015(c), the IRS may not infer actual knowledge from a reason to know of the income). Because there is no evidence that Ms. Salvi had actual knowledge of the amounts earned from A-Tek or the amount of Mr. Vanover's retirement account distribution for taxable year 2018,[15] we find that Ms. Salvi is

---

[14] In his Simultaneous Answering Brief (Doc. 64) Mr. Vanover argues that this Court should "infer[] an equitable standard that would prevent an abusive spouse from obtaining section 6015(c) relief." We find no textual basis for this assertion, so we find the argument unavailing.

[15] The fact that Ms. Salvi compiled tax documents and signed the return indicates constructive knowledge of the distribution, but it does not indicate actual knowledge as is relevant for relief under section 6015(c).

[*23] eligible for proportional relief for these items pursuant to section 6015(c).

### D.     *Section 6015(f) Relief*

Finally, except to the extent stated above, because Ms. Salvi does not qualify for relief under section 6015(b) or (c), she may seek relief under section 6015(f) for the understatement of tax for taxable year 2018. Additionally, Ms. Salvi can seek relief only under section 6015(f) for the underpayments of tax for taxable years 2017 and 2018. Section 6015(f) provides relief from joint and several liability if it is inequitable to hold the requesting spouse liable for an unpaid tax or any deficiency (or any portion thereof) after taking into account all the facts and circumstances. § 6015(f)(1)(A); *Porter*, 132 T.C. at 206; Treas. Reg. § 1.6015-4(a).

Treasury Regulation § 1.6015-4(c) directs us to Revenue Procedure 2013-34 for relevant guidance.[16] Revenue Procedure 2013-34 sets forth a three-step analysis for evaluating section 6015(f) claims for relief: (1) the requesting spouse must satisfy the seven threshold requirements, Rev. Proc. 2013-34, § 4.01; (2) the requesting spouse must satisfy the three-part test for streamlined relief, *id.* § 4.02, 2013-43 I.R.B. at 400; or (3) if a requesting spouse does not satisfy the test for streamlined relief, the requesting spouse may still qualify for relief from joint and several liability if it would be inequitable to hold the spouse liable in the light of the nonexclusive list of factors outlined in Revenue Procedure 2013-34, § 4.03, 2013-43 I.R.B. at 400–403. Although the Court considers those procedures when reviewing the Commissioner's determination, the Court is not bound by them. *Leith v. Commissioner*, T.C. Memo. 2020-149, at *19.

### 1.     *Threshold Requirements*

The requesting spouse must meet seven threshold requirements to be considered for relief under section 6015(f). Rev. Proc. 2013-34, § 4.01. Those requirements are (a) the requesting spouse filed a joint return for the taxable year for which relief is sought; (b) relief is not available to the requesting spouse under section 6015(b) or (c); (c) the claim for relief is timely filed; (d) no assets were transferred between the spouses as part of a fraudulent scheme; (e) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (f) the

---

[16] Rev. Proc. 2000-15, 2000-1 C.B. 447, *superseded by* Rev. Proc. 2003-61, 2003-2 C.B. 296, *superseded by* Rev. Proc. 2013-34, 2013-43 I.R.B. 397.

**[\*24]** requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (g) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income. Rev. Proc. 2013-34, § 4.01.

As discussed *supra* Part IV.A, the parties have stipulated that Ms. Salvi and Mr. Vanover elected to file a joint return for the taxable years at issue, a stipulation which is also supported by the broader record. Next, with respect to the items attributable to Mr. Vanover for taxable year 2018, the Court has granted Ms. Salvi relief under section 6015(c); therefore, she is not eligible for relief for those items pursuant to 6015(f). Further, Ms. Salvi filed a timely claim for relief for the taxable years at issue, and there is no evidence that Ms. Salvi and Mr. Vanover transferred assets as part of a fraudulent scheme, that Mr. Vanover transferred disqualified assets to Ms. Salvi, or that they knowingly filed a fraudulent return. *See* Rev. Proc. 2013-34, § 4.01(1)–(6), 2013-43 I.R.B. at 399.

We now turn to the final threshold requirement, that to be eligible for relief under section 6015(f) a requesting spouse, like Ms. Salvi, must show that the income tax liability from which she seeks relief is attributable (either in full or in part) to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income. *See* Rev. Proc. 2013-34, § 4.01(7), 2013-43 I.R.B. at 399–400. This rule is subject to a number of exceptions, including in instances where attribution is solely due to the operation of community property laws, nominal ownership, misappropriation of funds, abuse, or fraud committed by the nonrequesting spouse.[17] *Id.*

---

[17] In his Simultaneous Opening Brief (Doc. 61) respondent states that Ms. Salvi satisfies all seven threshold conditions for relief under section 6015(f). *See* Rev. Prov. 2013-34, § 4.01. But respondent also states that the entire underpayment for taxable year 2017 was due to insufficient withholding by Ms. Salvi and that approximately two-thirds of the underpayment for taxable year 2018 was due to insufficient withholding by her. Respondent then continues, stating that Ms. Salvi's Form W–2 income is attributable or partially attributable to Ms. Salvi because the nominal ownership exception applies in this case. Respondent reasons that the nominal ownership exception applies because the Form W–2 income was titled in Ms. Salvi's name.

Respondent misapplies the threshold attribution condition and the nominal ownership exception. If the liability is wholly or partially attributable to the requesting

**[\*25]** Respondent asserts that the entire underpayment for taxable year 2017 was attributable to insufficient withholding by Ms. Salvi. Further, respondent argues that approximately two-thirds of the underpayment for taxable year 2018 is attributable to insufficient withholding by Ms. Salvi. Ms. Salvi bears the burden of proving that she is entitled to equitable relief under section 6015(f), *see Porter*, 132 T.C. at 210, which includes showing that the income tax liabilities are attributable to items of Mr. Vanover or his income, *see Wang v. Commissioner*, T.C. Memo. 2014-206. Ms. Salvi has not met her burden of proving the proper allocation of items. *See id.* And in any event, even assuming arguendo that Ms. Salvi had shown that the underpayments were solely attributable to Mr. Vanover or his income, as discussed further below, it would not change the outcome of this case.

With respect to the understatement for taxable year 2018, as discussed above, the Court has already granted Ms. Salvi relief under section 6015(c) for the items allocable to Mr. Vanover. With respect to the remaining items for taxable year 2018, we find that such items are attributable to Ms. Salvi and, because no exception is applicable, we conclude that Ms. Salvi is not eligible for relief with respect to those items. *See* Rev. Proc. 2013-34, § 4.01(7); *see also, e.g.*, *Phemister v. Commissioner*, T.C. Memo. 2009-201, 2009 WL 2877907, at \*16. Accordingly, we need not address further the understatement for taxable year 2018.

## 2. *Streamlined Determination*

Revenue Procedure 2013-34, § 4.02, sets forth circumstances under which the Commissioner will make a streamlined determination granting equitable relief to the requesting spouse. These include that she establishes that she (a) is no longer married to the nonrequesting spouse, (b) would suffer economic hardship if not granted relief (economic hardship requirement), and (c) did not know or have reason to know that there was an understatement or deficiency on the joint income tax return or did not know or have reason to know that the

---

spouse, then the requesting spouse is generally not eligible for relief from those amounts unless an exception applies. *See id.* § 4.01(7). As is the case here, Ms. Salvi's Form W–2 income is attributable to her, and she generally is ineligible for relief from those items. *See id.* The nominal ownership exception would apply if the income items were titled in Ms. Salvi's name, but Mr. Vanover ultimately received or was the beneficial owner of such items of income. *See id.*; *see also, e.g.*, *Robinson v. Commissioner*, T.C. Memo. 2020-134, at \*22–23. As that is not the case here, we do not find that the nominal ownership exception applies.

**[*26]** nonrequesting spouse would not or could not pay the tax reported on the joint income tax return. *Id.* The requesting spouse must establish that she satisfies each of the three conditions to receive a streamlined determination granting relief. *Id.* As relevant here, we find that Ms. Salvi would not suffer economic hardship if relief were not granted; therefore, not all the streamlined determination conditions are satisfied.

Specifically, the economic hardship condition is met when a failure to grant relief from joint and several liability would cause the requesting spouse to be unable to pay reasonable basic living expenses. *Id.* § 4.02(2), 4.03(2)(b), 2013-43 I.R.B. at 400, 401. If denying relief would not cause the requesting spouse economic hardship, this condition for streamlined relief is not satisfied. *Id.* § 4.02(2). Generally, a requesting spouse would suffer economic hardship if (1) the requesting spouse's income is less than 250% of the federal poverty guidelines or if her monthly income exceeds her reasonable basic living expenses by $300 or less and (2) the requesting spouse does not have assets from which the requesting spouse can make payments towards the tax liability and still meet reasonable basic living expenses. *Id.* § 4.02(2), 4.03(2)(b); *see also Contreras v. Commissioner*, T.C. Memo. 2019-12, at *16–17.

Additionally, if neither of the foregoing tests is met, then the Court will also consider additional factors such as (1) the taxpayer's age and earning potential, (2) an amount reasonably necessary for food, clothing, housing, medical expenses, and transportation, (3) the amount of assets available to pay the taxpayer's expenses, (4) the cost of living in the geographical area in which the taxpayer lives, and (5) any other factors bearing on economic hardship. Rev. Proc. 2013-34, § 4.02(2) (citing *id.* § 4.03(2)(b) ("Whether the requesting spouse will suffer economic hardship is determined based on rules similar to those provided in Treas. Reg. § 301.6343-1(b)(4) . . . .")).

This Court is tasked with evaluating Ms. Salvi's economic position at the time of trial on April 15, 2024.[18] *See Pullins*, 136 T.C. at 446–47. A hypothetical hardship is insufficient to justify relief, and a taxpayer must demonstrate that imposing joint and several liability is

---

[18] Because we must evaluate Ms. Salvi's economic position as of the time of trial, we do not find Ms. Salvi's statements regarding her economic position on her Form 8857 helpful in the instant analysis. *See Pullins v. Commissioner*, 136 T.C. 432, 446–47 (2011).

**[\*27]** "inequitable in present terms." *Id.* at 446 (quoting *Von Kalinowski v. Commissioner*, T.C. Memo. 2001-21, 2001 WL 77034, at \*8).

At the time of trial, on April 15, 2024, Ms. Salvi testified that she makes approximately $85,000 per year. The federal poverty guidelines for taxable year 2024 provide that a household with three persons in the contiguous 48 states has a poverty threshold of $25,820, *see* 42 U.S.C. § 9902(2); *see also* Annual Update of the HHS Poverty Guidelines, 89 Fed. Reg. 2961, 2962 (Jan. 17, 2024), 250% of which equals $64,550. Accordingly, on the basis of the facts and circumstances, Ms. Salvi does not meet the requirements to show economic hardship.

Further, considering the evidence before the Court, Ms. Salvi has not established that she would face present hardship if she were not granted relief. Ms. Salvi is highly educated, with both a bachelor's and a master's degree. Ms. Salvi is currently employed as a human resource professional and owns her home. These facts do not support a finding that it would be inequitable to impose joint and several liability based on Ms. Salvi's economic position. *See Pullins*, 136 T.C. at 446 (citing *Von Kalinowski v. Commissioner*, 2001 WL 77034, at \*8). Accordingly, this condition for streamlined relief is not satisfied.

Because the requirements of the streamlined determination are conjunctive, and because Ms. Salvi fails to meet the economic hardship requirement of the streamlined determination, she is not eligible for streamlined relief, and we will proceed to the full equitable relief analysis.

3. *Full Equitable Relief Analysis*

Under the full equitable relief analysis of section 6015(f), the Court will consider the following list of nonexclusive factors: (a) current marital status; (b) whether the requesting spouse would suffer economic hardship if relief were not granted; (c) in understatement cases, whether the requesting spouse knew or had reason to know of the understatement, or in underpayment cases, whether the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the tax liability, and in either case, the effect of any spousal abuse or financial control; (d) whether either spouse has a legal obligation to pay the outstanding federal income tax liability; (e) whether the requesting spouse significantly benefited from the understatement or underpayment; (f) whether the requesting spouse has made a good faith effort to comply with the income tax laws in the

**[\*28]** years following the tax years for which relief is sought; and (g) whether the requesting spouse was in poor mental or physical health at the time the joint return was filed. Rev. Proc. 2013-34, § 4.03(2). No single factor is dispositive, and "[t]he degree of importance of each factor varies depending on the requesting spouse's facts and circumstances." *See Rawat v. Commissioner*, T.C. Memo. 2024-56, at \*7 (quoting Rev. Proc. 2013-34, § 4.03(2)). The Court can also consider any other relevant facts. *Id.*

### a.  *Marital Status Factor*

This condition is met if the requesting spouse is no longer married to the nonrequesting spouse. Rev. Proc. 2013-34, § 4.03(2)(a), 2013-43 I.R.B. at 400. Ms. Salvi and Mr. Vanover stipulated that they were divorced on January 20, 2023, which is supported by the accompanying decree of divorce in the record. Accordingly, this factor favors relief.

### b.  *Economic Hardship Factor*

This factor weighs in favor of relief when a failure to grant relief from joint and several liability would cause the requesting spouse to be unable to pay reasonable basic living expenses. *Id.* § 4.03(2)(b), 2013-43 I.R.B. at 401. If denying relief would not cause the requesting spouse economic hardship, this factor is neutral. *Id.* As discussed *supra* Part IV.D.2, Ms. Salvi has not presented sufficient evidence to prove her claim of economic hardship. Accordingly, this factor is neutral.

### c.  *Lack of Knowledge Factor*

The standard for the lack of knowledge factor with respect to an underpayment of income tax, as occurred here for taxable years 2017 and 2018, weighs in favor of relief if the requesting spouse reasonably expected the nonrequesting spouse to pay the tax liability reported on the return. Rev. Proc. 2013-34, § 4.03(2)(c)(ii), 2013-43 I.R.B. at 401–02. This factor weighs against relief if it was not reasonable for the requesting spouse to believe that the nonrequesting spouse would or could pay the tax liability reported on the return. *Id.* However, knowledge may be mitigated in instances where there is abuse or financial control by the nonrequesting spouse. *See id.* § 4.03(2)(c)(i) and (ii).

Specifically, the requesting spouse must establish that (1) when she signed the return she did not know and had no reason to know that the tax reported on the return would not be paid and (2) it was

**[*29]** reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the tax shown due. *Id.* § 4.03(2)(c)(ii); *see Morello v. Commissioner*, T.C. Memo. 2004-181, 2004 WL 1765148, at *4.

At the time Ms. Salvi and Mr. Vanover filed the joint returns for taxable years 2017 and 2018, Ms. Salvi had knowledge of, and certainly had reason to know that tax reported on the returns would not be paid. Furthermore, it was entirely unreasonable for Ms. Salvi to believe that Mr. Vanover would pay the amounts due for the taxable years at issue.

The testimony and the documentary evidence in the record reflect that Ms. Salvi was primarily responsible for managing the bills in the household and that she took a primary role in gathering tax information and communicating with Mr. DiPietro, her cousin and CPA, who prepared joint returns for the taxable years at issue. Additionally, Ms. Salvi knew that Mr. Vanover had financial problems "[p]robably after we'd been married a couple years," i.e., 2017, "because [Mr. Vanover] would get a lot of phone calls for collections" and he "couldn't get credit cards." This indicates that Ms. Salvi had reason to know that Mr. Vanover would not pay the tax due and that any contrary belief was unreasonable.

Furthermore, Ms. Salvi and Mr. Vanover had previously filed for an extension for taxable year 2015, and they failed to pay the tax on the 2015 joint return. Accordingly, in 2017 Ms. Salvi and Mr. Vanover retained a lawyer to help secure an installment agreement for the outstanding liability for taxable year 2015. This fact alone is sufficient to demonstrate that Ms. Salvi knew or should have known that Mr. Vanover would not pay the tax shown as due on the return and that it was unreasonable for her believe that Mr. Vanover would pay that tax. *See* Rev. Proc. 2013-34, § 4.03(2)(c)(ii); *see also Morello v. Commissioner*, 2004 WL 1765148, at *4. Further, on her Form 8857 Ms. Salvi stated that she "began to suspect problems" when Ms. Szczepanik "discovered [that Mr. Vanover] ha[d] a lot of past due taxes." This fact further demonstrates that Ms. Salvi had reason to know that Mr. Vanover would not pay the tax due and that any belief that he would pay the tax liability was unreasonable.

Ms. Salvi makes various claims that she was subject to abuse or financial control by Mr. Vanover. Knowledge may be negated if the nonrequesting spouse abused the requesting spouse or maintained control of the household finances by restricting the requesting spouse's

**[\*30]** access to financial information such that the nonrequesting spouse's actions prevented the requesting spouse from questioning or challenging the understatement on the return or the underpayment of the liability. Rev. Proc. 2013-34, § 4.02(3)(a), 4.03(2)(c)(i) and (ii). We will discuss these items in turn.

i.     *Financial Control*

Ms. Salvi claims that she was a victim of financial abuse. However, considering the evidence in the record, we cannot agree. The record reflects that Ms. Salvi was the spouse primarily responsible for managing the finances of the household. Further, during the taxable years at issue, the parties stipulated, and the record also supports, that Mr. Vanover contributed funds to a joint bank account for various household expenses, including Ms. Salvi's mortgage. Ms. Salvi had control of the joint funds to pay household expenses, including her mortgage, and of her own funds deposited in her separate bank account.

At trial Ms. Salvi claimed that Mr. Vanover withheld funds on occasion. However, Ms. Salvi has failed to carry her burden. Aside from Ms. Salvi's testimony, which we did not find credible and which contradicts the parties' stipulations, Ms. Salvi did not present any evidence to support her uncorroborated testimony that Mr. Vanover did not contribute to the household expenses while he lived at the marital residence. This is despite the fact that Ms. Salvi claimed to have in her control evidence showing that Mr. Vanover did not contribute to the household expenses. Accordingly, we do not find evidence of financial control sufficient to obviate Ms. Salvi's knowledge for the taxable years at issue.

ii.     *Abuse*

Finally, Ms. Salvi claims that she was a victim of abuse during her relationship with Mr. Vanover. "Abuse comes in many forms and can include physical, psychological, sexual, or emotional abuse, including efforts to control, isolate, humiliate, and intimidate the requesting spouse, or to undermine the requesting spouse's ability to reason independently and be able to do what is required under the tax laws." *Id.* § 4.03(2)(c)(iv), 2013-43 I.R.B. at 402; *see, e.g.*, *Leith*, T.C. Memo. 2020-149, at \*27. This Court takes all facts and circumstances into account in determining the presence of abuse, and it requires—at a minimum—specificity regarding allegations of abuse. Rev. Proc. 2013-34, § 4.01; *see Nihiser v. Commissioner*, T.C. Memo. 2008-135, 2008

**[\*31]** WL 2120983, at \*10–11; *see also Deihl v. Commissioner*, 603 F. App'x 527, 529 n.4 (9th Cir. 2015), *aff'g* T.C. Memo. 2012-176. A generalized claim of abuse is insufficient. *See Thomassen v. Commissioner*, T.C. Memo. 2011-88, 2011 WL 1518446, at \*11–12, *aff'd*, 564 F. App'x 885 (9th Cir. 2014).

The Court takes claims of abuse seriously, but it is Ms. Salvi's burden to prove entitlement to relief. *See Porter*, 132 T.C. at 210. Considering the facts and circumstances in the record, we do not find that Ms. Salvi's claims rise to a level that negates her knowledge. *See Freman*, T.C. Memo. 2023-10, at \*17. Generally, we found Ms. Salvi's claims of abuse too generalized to support a finding of abuse. *See Thomassen v. Commissioner*, 2011 WL 1518446, at \*11–12. At trial, Ms. Salvi did not provide specific testimony regarding the physical altercation between herself and Mr. Vanover in February 2020 or regarding any other instances of physical abuse. Rather it was Mr. Vanover who credibly testified that Ms. Salvi engaged in physical acts of violence against him during the February 2020 altercation. We found Mr. Vanover's testimony on this point both sincere and candid. Further, Ms. Salvi was convicted of domestic violence and disorderly conduct. That conviction stemmed from the February 2020 incident and was subsequently affirmed by the Court of Appeals of Ohio.

To the extent Ms. Salvi herself was a victim of spousal abuse in February 2020, it does not warrant a different outcome. First, at trial Ms. Salvi did not testify about the February 2020 altercation with Mr. Vanover. To the extent that Ms. Salvi alleged abuse in her Forms 8857 and 12509, and attached thereto evidence in support of this contention, we find that it occurred after the tax returns at issue were filed and is therefore immaterial to the issues before us. *See Welwood v. Commissioner*, T.C. Memo. 2019-113, at \*21 ("[W]e are unpersuaded that any perceived abuse was material to the issues before us.").

Accordingly, we find that Ms. Salvi had reason to know that the tax on the return would not be paid, and therefore we find the knowledge factor weighs against relief.

### d.     *Legal Obligation Factor*

This factor weighs in favor of relief when the nonrequesting spouse, through a divorce decree or other legally binding agreement, bears the sole legal obligation to pay the outstanding liability. Rev. Proc. 2013-34, § 4.03(2)(d), 2013-34 I.R.B. at 402. This factor weighs against

**[\*32]** relief if the requesting spouse has the legal obligation to pay, and it is neutral if the divorce decree is silent as to tax liabilities or the spouses are not separated. *Id.* The divorce decree orders that "the parties shall evenly divide the remaining balances owed to the [IRS] . . . for the marital tax years of 2015 through 2019." This militates against relief. However, the divorce decree continues, and orders that "[t]he equal division of these marital tax years is subject to modification upon future ruling/order of the United States Tax Court and the IRS." Because the equal division of the tax liability remains subject to modification by the Tax Court, this factor is neutral.

### e. *No Significant Benefit Factor*

This factor weighs in favor of relief if the requesting spouse did not receive a significant benefit, that is, a benefit in excess of normal support, due to the understatement or underpayment of tax.[19] *Soler v. Commissioner*, T.C. Memo. 2022-78, at \*12–13 (citing *Butner v. Commissioner*, T.C. Memo. 2007-136). This factor weighs against relief if the requesting spouse received a significant benefit due to the understatement or underpayment of tax. Rev. Proc. 2013-34, § 4.03(2)(e), 2013-34 I.R.B. at 402. Any amounts Ms. Salvi received from Mr. Vanover constitute normal support, and we find that Ms. Salvi did not receive any significant benefit because of the underpayment of tax during the taxable years at issue. *See Pullins*, 136 T.C. at 452 ("Mortgage payments on a middle-class home constitute normal support that is not considered to generate 'significant benefit'."). We find this factor weighs in favor of relief.

### f. *Compliance Factor*

This factor weighs in favor of relief if the requesting spouse is in compliance with the tax laws for the tax years after being divorced from the nonrequesting spouse. Rev. Proc. 2013-43, § 4.03(2)(f)(i), 2013-34 I.R.B. at 402. This factor weighs against relief if the requesting spouse is not in compliance for the tax years after being divorced from the nonrequesting spouse. *Id.* This factor is neutral if the requesting spouse has made a good faith effort to comply with the tax laws but was unable to fully comply. *Id.*

---

[19] The Court treats this factor as favoring relief despite the fact that Revenue Procedure 2013-34 treats this factor as neutral. *Compare Robinson*, T.C. Memo. 2020-134, at \*33–34, *with* Rev. Proc. 2013-36, § 4.03(2)(e).

**[\*33]** Since her separation from Mr. Vanover, Ms. Salvi's tax compliance has varied. During the administrative proceeding the IRS determined that the compliance factor weighed against relief because, although Ms. Salvi filed separate tax returns after her separation from Mr. Vanover, she was not in full compliance with federal tax laws. At present, the record does not contain any evidence regarding Ms. Salvi's tax compliance for taxable year 2019 or 2020. As to taxable year 2021, Ms. Salvi could not remember whether she had filed a return. For taxable year 2022 Ms. Salvi stated that she had filed for an extension that she "keep[s] renewing," and that, as of the time of trial, she had not yet filed that return. The record does not contain any evidence regarding Ms. Salvi's tax compliance for taxable year 2023.[20]

With the exception of the return for taxable year 2023, since her separation from Mr. Vanover in February 2020, Ms. Salvi has either not filed a tax return or has failed to present any evidence to support the contention that she has made a good faith effort to comply with the income tax laws. Considering all the facts regarding her subsequent compliance with the income tax laws, and particularly Ms. Salvi's testimony regarding her yet-to-be-filed return for taxable year 2022, we find that this factor militates against relief.

g.     *Mental or Physical Health Factor*

This factor weighs in favor of relief if the requesting spouse was in poor physical or mental health at the time the returns from which she seeks relief were filed, or at the time she requested relief. *Id.* § 4.03(2)(g), 2013-34 I.R.B. at 403. If the requesting spouse was in neither poor mental nor physical health, this factor is neutral. *Id.* While Ms. Salvi claimed that she was a victim of abuse at trial, she did not testify or argue that she suffered emotional distress as a result of such abuse. On brief, Ms. Salvi claims that she has suffered mental duress from the abuse inflicted by Mr. Vanover. The Court is sympathetic to Ms. Salvi's claim of abuse and mental duress, but Ms. Salvi raised her argument regarding mental duress for the first time in her Simultaneous

---

[20] The record is void of evidence regarding Ms. Salvi's tax compliance for taxable year 2023. The filing deadline for returns for taxable year 2023 was on or before the end of the day on April 15, 2024. I.R.S. News Release IR-2024-04 (Jan. 8, 2024); *see also* § 6072(a) (providing that a person required to make a return of income under section 6012 shall file such return on or before April 15). Trial in this case occurred during the day on April 15, 2024, and thus Ms. Salvi had until the end of the day to file her return. Accordingly, we find that the absence of this evidence is neutral. *See Freman*, T.C. Memo. 2023-10, at \*31.

**[\*34]** Answering Brief (Doc. 67); consequently, she has waived the argument. *See Sehati v. Commissioner*, T.C. Memo. 2025-3, at \*7. Further, we find that any such claims are unsupported by the record. Accordingly, we find that this factor is neutral.

Considering the foregoing factors, we conclude that it would not be inequitable to hold Ms. Salvi liable for the underpayment amounts for the taxable years at issue. Accordingly, we find that Ms. Salvi is not eligible for relief pursuant to section 6015(f) for the taxable years at issue.

V.    *Conclusion*

We conclude that Ms. Salvi is eligible for partial relief pursuant to section 6015(c) with respect to the understatement of tax attributable to erroneous items of Mr. Vanover for taxable year 2018. However, we conclude that it is not inequitable to hold Ms. Salvi liable for all remaining amounts, and therefore we will deny relief pursuant to section 6015(b), (c), and (f) for all other items for the taxable years at issue.

The Court has considered all the other contentions of the parties and, to the extent not discussed above, finds those arguments to be irrelevant, moot, or without merit.

*Decision will be entered under Rule 155.*